KATHLEEN HICKEY, by Guardian, etc., Respondent, *v.* JOHN P. TAAFFE, Appellant.

The duty incumbent upon an employer of furnishing a safe machine for his employe to work with does not require the best possible appliances; his duty is discharged if he furnishes a machine reasonably safe and suitable, such as is ordinarily used in the business, and which is in good repair.

An employe in accepting service, with a knowledge of the character and position of the machinery he is required to operate, takes the risk of such perils as are incident to the use of the machinery in its then condition, and are apparent, and he cannot call upon the employer to make alterations to secure greater safety.

*It seems* that in putting a person of immature years at work upon dangerous machinery with which he is unfamiliar, the employer must give such instructions as will cause the employe to fully understand and appreciate his dangerous position and the consequences of a want of care. If the employe is so young that after full instructions he fails to understand them or to appreciate the dangers arising from want of care, he is too young for the employment and the employer puts or keeps him at work at his own risk.

Where, however, it appears that, although no such instructions were given, the employe was aware of and fully appreciated the dangers to be apprehended from working the machinery and was fully competent to perform the work, the fact that he is a minor does not alter the general rule that the employe takes upon himself the risks which are patent and incident to the employment.

Plaintiff, a young girl about fourteen years and seven months old, was employed by defendant in his laundry to feed collars to an ironing machine. She was instructed how to do the work, but was not instructed as to the dangers of the employment. She worked the machine safely however, for six weeks, during which she became acquainted with and fully appreciated the danger to be apprehended from allowing her hand to be caught between the rollers of the machine; which was of a kind ordinarily used. There were several of the kind in use in the laundry, and no operator or feeder had ever been hurt. After one end of a collar had passed between the rollers, in endeavoring to straighten out the other end which lapped over, one of plaintiff's fingers was caught in the button-hole, and being unable to extricate it in time, her hand was drawn between the rollers and badly crushed and burned. In an action to recover damages, *held,* defendant was not liable ; that conceding there was a neglect of duty on the part of defendant in not advising plaintiff of the dangers to be apprehended, the injury did not occur on account of any act done or omitted on her part because of want of

knowledge or appreciation of the dangers, but was the result of an accident which could not have been foreseen and for which no one was at fault.

(Argued February 11, 1887; decided March 8, 1887.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 9, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been caused by defendant's negligence.

The material facts are stated in the opinion.

*Esek Cowen* for appellant. Between employer and employe ordinary care only is necessary, and, as in other cases, negligence is to be proved, and not presumed. (*Steinweg* v. *E. R. Co.*, 43 N. Y. 123.) The master owes no duty to the servant to furnish the best known or the best conceivable appliances, but is bound to furnish reasonably safe and suitable appliances. (*Burke* v. *Witherbee*, 98 N. Y. 562.) Accepting service, with a knowledge of the character and position of the structures, from which the employes might be liable to receive injury, the plaintiff could not call upon the defendant to make alterations to secure greater safety. (*Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548; *White* v. *Sharpe*, 27 Hun, 94; *De Forest* v. *Jewell*, 88 N. Y. 264; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 id., 128.) A person not of full age, like any other employe, takes upon himself the ordinary risks of his employment, and among those risks are dangers from the use of machinery, where such dangers are obvious to persons of ordinary intelligence. (*De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 125; *King* v. *B. & W. R. R. Co*, 9 Cush., 112.) The defendant was not bound to warn the plaintiff of a danger which, in the ordinary use of the machine by a person of ordinary intelligence and skill, could only arise from culpable carelessness. (*De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 3 T. & C. 257.) As no similar accident had ever before occurred, such want of previous experience was conclusive as to the

absence of negligence in the defendant in failing to warn plaintiff. (*Dougan* v. *Champ. Trans Co.*, 56 N. Y. 1; *Sutton* v. *N. Y. C. R. R. Co.*, 66 id. 243; *De Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 131; *Burke* v. *Witherbee*, 98 id. 562.)

*Patrick Keady* for respondent. Defendant was guilty of gross negligence in putting plaintiff, a fourteen-year-old child, without a word of warning, caution or advice, to work at a machine which was dangerous and unsafe, was out of. order and had no proper means of stopping or starting it at the time of the injury. (Addison on Torts [Wood's ed.] note, p. 607; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Coombs* v. *N. B. Cordage Co.*, 102 Mass. 585; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; Wharton on Negligence, § 222; *Fuller* v. *Jewett*, 80 N. Y. 46; Beach on Con. Neg. 350, 352; *Painton* v. *N. C. R. Co.*, 83 N. Y. 7.) Defendant violated the original contract of employment by taking plaintiff from "bunching" collars and cuffs, where she was safe, and putting her to work at a dangerous machine, by which she was injured. (*Benzing* v. *Steinway & Sons*, 101 N. Y. 541; Wood on Master and Servant, 25, § 17; *Hawley* v. *N. C. R. Co.*, 82 N. Y. 370.) It was the duty of defendant to caution and instruct this plaintiff as to the dangerous character of the machine. Having failed to do this he was guilty of negligence which entitled the plaintiff to recover. (Wood on Master and Servant, §§ 349, 350, 352; *Finnerty* v. *Prentice*, 75 N. Y. 615; *Bartonshill Coal Co.* v. *McGuire*, 3 Macq. 300, 311; *Grizzle* v. *Frost*, 3 Fost. and Finn. 623; *Clark* v. *Holmes*, 7 N. & U. 937; *Coombs* v. *N. B. Cordage Co.*, 102 Mass. 572, 585; Wharton on Neg., § 222; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Walsh* v. *Peet Valve Co.*, 110 id. 23; *R. R. Co.* v. *Fort*, 17 Wall. [U. S.] 554; *Siegel* v. *Schantz*, 27 N. Y. 353; *O'Byrne* v. *Burn*, 16 Ct. of Sess., § 1025; *East Saginaw City R. R. Co.* v. *Bohn*, 27 Mich. 503; *Nagle* v. *A. R. R. Co.*, 88 Penn. St. 35; Beach on Con. Neg. 350, 352; Addison on Torts [Wood's ed.] note, 607; *Lalor* v. *Chic. & C. R. R. Co.*, 52 Ill. 401; *Mellors* v. *Shaw*,

30 L. J. [C. P.] 333; *Weerus* v. *Mathison*, 4 Macq. H. L. C. 615; *Farrant* v. *Barnes*, 31 L. J. [C. P.] 139; *Strahlendorf* v. *Rosenthal*, 30 Wis. 674; *Sizer* v. *Syracuse*, 7 Lan. 67; *Haskins* v. *N. Y. C. & H. R. R. R. Co.*, 66 Barb. 129.) It was the duty of defendant to furnish safe, sound and suitable tools, implements, appliances and machinery for the use of the plaintiff. If he failed to do this he was guilty of negligence. (*Benzing* v. *Steinway & Son, supra*; *Lansing* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Corcoran* v. *Holbrook*, 59 id. 517; *Slater* v. *Jewett*, 85 id. 61; *Pantzar* v. *Tillie Foster Mining Co.*, 99 id. 368; *Larmore* v. *Crown Point Iron Co.*, 101 id. 391, 394; *Kain* v. *Smith*, 80 id. 468; *Fuller* v. *Jewett*, id. 946; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206; *Man* v. *Prest., etc.*, 91 id. 495; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549, 553; *Hofnagle* v. *N. Y. C. & H. R. R. R. Co.*, 55 id., 608.) There was no negligence on the part of plaintiff which contributed to the injury. The law does not expect or require the same maturity of judgment or the same degree of care in a child of tender years as in an adult. (*Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 83 N. Y. 620; *Thurber* v. *Harlem Bridge, M. & F. R. R. Co.* 60 id. 326; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 289; *Reynolds* v. *Same*, 58 id. 248, 252; *O'Mara* v. *H. R. R. R. Co.*, 38 id 445; *Mowbrey* v. *Cent. C. R. R. Co.*, 51 id. 666; Sherm. & Redf. on Neg. 59; *Crispin* v. *Babbitt*, 81 N.Y. 516. *Noak* v. *N. C. R. Co.*, 75 id. 320; *Hickey* v. *Taaffe*, 19 Week. Dig. 67; *Connolly* v. *Poillon*, 41 Barb. 369; *Finklestein* v. *N. Y. C. & H. R. R. R. Co.*, 24 Week. Dig. 323; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 417; *Dowling* v. *N. Y. C. & H. R. R. R. Co.*, 90 id. 670.) The forewoman who put plaintiff to work at the machine was not a fellow servant, but had power to employ and discharge operatives. She stood in the place of the defendant, the master. (*Brick* v. *Rochester, etc., R. R. Co.*, 98 N. Y. 211; *Crispin* v. *Babbitt*, 81 id. 516; *McCosker* v. *L. I. R. R. Co.*, 84 id. 77; *Gunther* v. *Graniteville Mfg. Co.*, 78 S C. 262; 44 Am. Rep. 573; *Benzing* v. *Steinway & Sons*, 101 N. Y. 547; *Ellis* v. *N.*

*Y. C. & H. R. R. R. Co.*, 95 id. 546; *Slater* v. *Jewett*, 85 id. 61; *Corcoran* v. *Holbrook*, 59 id. 517; *Gibson* v. *Erie R. Co.* 63 id. 449; *Kain* v. *Smith*, 25 Hun, 148; *Miller* v. *U. P. R. R. Co.*, 12 Fed. Rep. 600; *Bucher* v. *N. Y. C. & H. R. R. R. Co*, 98 N. Y. 128; *Salter* v. *U. & C. R. R. Co.*, 88 id. 49; *Morrison* v. *Erie R. Co.*, 56 id., 302; *Filer* v. *N. Y. C. & H. R. R. R. Co.*, 49 id., 52; *Stringham* v. *Stewart*, 100 id. 516.) The motions for a nonsuit were properly denied. There were controverted questions of fact which were properly submitted to the jury to decide. (*Probst* v. *Delamater*, 100 N. Y. 266; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 464; *Thurber* v. *H. B.. M. & F. R. R. Co.*, 60 id., 327, 331; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 289; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 id. 417; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 620; *Hayes* v. *Miller*, 70 id. 112; *Maher* v. *C. P. N. & E. R. R. Co.*, 67 id. 52; *Card* v. *Man. R. R. Co.*, 22 Week. Dig. 322; *Payne* v. *Troy & B. R. R. Co.*, 83 N. Y. 572; *Plank* v. *N. Y. C. R. R. Co.*, 60 id. 607; *Meehan* v. *Syracuse, etc., R. R. Co.*, 73 id. 585; *Ellis* v. *N. Y. C. & H. R. R. R. Co.*, 95 id., 546; *Coughtry* v. *Globe Woolen Co.*, 56 id. 124; *Manning* v. *Hogan,* 78 id., 615; *Fordham R. R. R. Co.*, 60 id. 327, 331; *Abrahams* v. *Reynolds*, 5 H. & N. 143; *Senior* v. *Ward*, 1 El. & El. 385; *Hutchinson* v. *N. Y., N. & B. R. Co.*, 5 Exch. 343, 354; *Kain* v. *Smith*, 89 N. Y. 375; *Gibson* v. *E. R. Co.*, 63 id., 449; 20 Am. Rep. 552; *Hart* v. *Hudson R. B. Co.*, 80 N. Y. 622; *Justice* v. *Lang*, 52 id. 323; *Healey* v. *Ryan*, 25 Week. Dig. 24.) Plaintiff may recover at common law, independent of any right of action given her by statute. (*Hickey* v. *Taaffe*, 99 N. Y. 204; *Laning* v. *N. Y. C. & H. R. R. R. Co.*, 49 id. 521, 539.)

PECKHAM, J. The plaintiff was a young girl employed by defendant in his laundry. At the time of her first coming there in April, 1882, she was fourteen years and four months old, and was employed by the sister of defendant, who superintended that department of the work, to bunch collars and

cuffs which was a perfectly safe employment.  Before going
to the laundry she had never worked nor seen machinery used
in a steam laundry.  She remained at this employment until
June sixteenth of the same year, when defendant's sister came
to her (as she says), and after telling her that the person who
fed the machine in question was absent, asked her to go over
to it and take her place, which she did, and she was there
shown how to put the collars and cuffs through and was told
to be careful and not let any laps go through, any ears, that is,
so that no part of the collars should lap over another part.

This machine had a platform in front of it, upon which the
feeder sat in a chair and placed the collars and cuffs which
were to be put through the ironing process on a flat desk in
front of her.  There were two rollers at the further edge of
the desk, one on top of the other; the lower one was hot
enough to iron the collars as they passed through, while the
upper pressed down upon it with a pressure of about 200
pounds.  The collars were fed to these rollers by the feeder,
and as one collar was started in on the left side of the machine
and " gripped " by the rollers, another was placed in position
by the side of it, and so on until the sixth would just be taken
by the rollers as the first one disappeared and the space left
vacant for another collar   There was a belt by which the
machine was operated, which, however, could not be reached
by the person feeding, but there was a girl at the rear or other
end of the machine where the collars came out who started
and stopped it.  The heated roller is hollow and revolves
around gas jets, and is heated to such a heat that if a collar
stopped on it for a minute it would have been scorched brown
or burned.  If a person's hand were caught between these
rollers it could not be dragged out and the machine would
have to be stopped and the weights which pressed it down
would have to be removed from the upper roller.  This
machine would iron about 600 dozen pieces in the course of
a working day.  There were no guards in front of the rollers
for the purpose of preventing anything from being drawn
between them.

The defendant on his examination said that at one time he had himself placed a lever or shifter on this machine by which to start and stop it ; it was overhead on the ceiling and it could not be reached from where the plaintiff sat, but could be handled by a cord.   That lever had been off about two months at the time when the accident occured for which this action is brought.   Defendant says he found the lever was not convenient and the old way was the easiest and safest.   He says he did not take it off as a matter of economy because the girls used to take too much time in stopping that lever.   There never was at any time a lever or shifter within reach of the platform where the feeder sat.   The machine as it existed on the day of the accident was in perfect repair and condition, according to the plan upon which it was built, and it did not appear from the evidence that there was in use any machine moved by steam for ironing collars which had any other or better or safer means for stopping it or for guarding the person who fed it.

On the sixteenth of June, when plaintiff went to work at this machine she had never used any of the machines in the laundry.   She says that no one in the factory ever instructed her as to the dangers of this machine — neither defendant or anybody else ever gave her any such instructions.   Before the plaintiff, no operator or feeder of the machine had ever been hurt, although there were several of such machines in the laundry and they had been in use several years.   One person had been injured, but she was not an operator and had no proper business at the machine when in operation.   For six weeks, or from June sixteenth to July twenty-sixth, the day she was injured, the plaintiff worked constantly on this machine in feeding the collars and cuffs.   During this time she says defendant had talked to her about her hair being loose or too long, and he told her to keep her hair up in front because it might get caught in the roller and be burned off.   She also said she knew the rollers were so close together that they would, if they caught the hair, either draw it out of her forehead or burn it off by the heat, and she knew this did once occur.

She got her own hair caught once four or five days after she was first employed on it, and she knew then the rollers were hot enough to iron a collar, and she had always been told there was a pressure of the upper roller on the lower. She also said she knew that if her hand was caught between the rollers of that machine that it would be burned and crushed, and she knew that other girls had had their hair caught and burned off on the machine. As to the weight of the pressure of the upper roller upon the lower she knew it was pressed upon or weighted with weights which she saw, and she saw the upper roller raised by means of a lever which was operated by stooping down and making great pressure with the body on the lever, which would then raise the roller. For six weeks she had had the experience of working at and feeding this machine, and had obtained the knowledge above stated, when on the twenty-sixth of July the accident in question happened. She gives this account of the manner of its happening: "I commenced on the left-hand side and commenced to put it (the collar) through the machine; I caught a collar with an ear on it; I put my finger out to pull it out and my hand was caught and drawn right through; the way it got caught, it was an old collar, my finger got caught in the button hole and I could not get it out; the machine went quite fast; there was a lap in the ear of a stand-up collar — gentleman's collar, the button-hole part was lapped back on the collar; I put my finger out to pull it out and my hand was caught and drawn right through; I tried to get it out; I put out my foot to push off the belting and could not reach it."

The girl at the other end of the machine heard the cries and stopped the machine. The plaintiff's hand was then taken out, the upper roller having been raised, and she was taken home. She was most terribly burned and bruised, and suffered an injury of a permanent nature and which may result in the entire loss of her hand, and, perhaps, arm up to the elbow.

The plaintiff commenced this action to recover for the injury, and in her complaint alleged that the defendant "care-

lessly and unlawfully set the plaintiff to work on machinery which was dangerous to her life and limb without informing her of such danger, and of which she was entirely ignorant, * * * and that defendant well knew that said machinery was dangerous and unsafe. That through the gross negligence, carelessness and wrong doing of the defendant * * * and without any negligence on the part of plaintiff, plaintiff's right hand was caught in defendant's machinery," etc. The plaintiff had a verdict which was affirmed at the General Term and the defendant appealed to this court.

The counsel for defendant upon the argument here very properly, as we think, from the testimony, conceded there was no question of contributory negligence in the case.

The right of the plaintiff to maintain this recovery was placed by her counsel upon three grounds, (1) the duty of defendant to furnish safe, sound and and suitable tools and machinery for the use of the plaintiff; (2) the negligence of defendant in failing to warn the plaintiff of the character of the machine and its dangers from lack of proper appliances to stop it by the person feeding it; (3) the defendant's violation of the original contract of employment by taking her from " bunching " the collars and placing her at work feeding this dangerous machine.

*First.* The duty to furnish safe machinery means, of course, machinery that is safe, considering the use for which it is designed, for otherwise very little machinery could be operated.

A steam engine may be built in the best manner, of the best materials, etc., and yet there is the possible danger inherent in the nature of the machine itself as operated by such an element, which may lead to an explosion that could not be foreseen or guarded against. Nor does the duty of furnishing a safe machine oblige an employer to furnish the best possible appliances. His duty is discharged when he furnishes a machine which is reasonably safe and suitable. (*Burke* v. *Witherbee*, 98 N. Y. 562.)

We are of opinion that the defendant in this case fully complied with all his legal obligations in this behalf.

The machine that he furnished was in perfect repair at the time of the accident. There was but one way to stop it, and that was by taking the belt off at a point in rear of the rollers in front of which the plaintiff sat. The machine was built on that plan, and was one of a large number of the same kind and used for the same purpose. There was no evidence that a machine for this purpose had ever been built which could be stopped in any other manner.

The defendant, it is true, sometime before the plaintiff came to the machine to work it, had himself provided other and additional means of stopping the machine, but, as he says in his testimony, which upon this point is wholly uncontradicted, it was found not to work as well as the old way, and these additional means had been removed before the plaintiff was placed as a feeder at the machine. But even if the means had remained, the plaintiff, after her hand was caught, could not have reached the lever to stop the action of the machinery. The defendant could remove these things which he had placed upon the machine by way of experiment to test their usefulness and convenience, without being, under the circumstances of this case, guilty of any negligence. The same observations apply with added force to the fact that there were no guards in front of the rollers.

The defendant had never himself placed any there, and none had been known to have been placed on any such machine in any other factory where used. Indeed, it could not be expected that such guards should be placed there, for it is plain that they would materially interfere with the working of the machine.

But the plaintiff, in accepting this work and entering upon the employment about this machine assumed the usual risks and perils of the employment and such as were incident to the use of this machine in its then condition, so far as such risks were apparent. I speak of this as the general rule, and, whatever exception there may be to it on account of the youth of the plaintiff will be spoken of hereafter. But upon the general proposition as to the use of machinery, there is no

doubt that an employe in accepting service with a knowledge of the character and position of the machinery, the dangers of which are apparent, and from which he might be liable to receive injury, assumes the risks incident to the employment, and he cannot call upon the defendant to make alterations to secure greater safety. (*Gibson* v. *Erie R. Co.*, 63 N. Y. 449; *Powers* v. *N. Y. L. E. & W. R. R. Co.*, 98 id. 274; *Shaw* v. *Sheldon*, 103 id. 667.)

We see no failure of defendant to comply with his legal obligations as to the first ground of liability maintained by plaintiff's counsel.

(2) As to the second there is no doubt that in putting a person of immature years at work upon machinery which in some aspects may be termed dangerous, an employer is bound to give the employe such instructions as will cause him to fully understand and appreciate the difficulties and dangers of his position and the necessity there is for the exercise of care and caution; merely going through the form of giving instructions, even if such form included everything requisite to a proper discharge of his duties by such employe if understood, would not be sufficient. In placing a person of this description at work upon dangerous machinery, such person must understand, in fact, its dangerous character and be able to appreciate such dangers and the consequences of a want of care, before the master will have discharged his whole duty to such an employe. (*Sullivan* v. *India Mfg. Co.*, 113 Mass. 396, at 399; *Finnerty* v. *Prentice*, 75 N. Y. 615, MS. opinion ANDREWS, J., where such rule is recognized as existing in this State.)

If a person is so young that even after full instructions he wholly fails to understand them and does not appreciate the dangers arising from a want of care, then he is too young for such employment and the employer puts or keeps him at such work at his own risk.

Assuming the plaintiff's statement in this case to be true, that she had no instructions as to the danger of the machine and that she had never worked at any machinery before, if

under such circumstances this accident had happened within a short time of her employment, and because of her unfamiliarity with and lack of appreciation of the dangers attendant upon the working of the machine, the defendant may well have been liable for the damages sustained by her on account of such ignorance. But the case discloses wholly different facts; it is conclusively shown from her own evidence, already quoted, that she was aware of and fully appreciated and understood the dangers to be apprehended from working the machine, and it is equally clear, and from the same source of information, that she was perfectly competent to discharge the duty of feeding the machine long before the accident occurred.

She had not, it is true, received any instructions as to its dangers from the defendant or his agents as she says, but she had acquired the information in fact from the best of all teachers, that of practical experience. She knew, therefore, all that the instructions of the defendant would have imparted to her. This was enough. Being of an age to appreciate and having full knowledge of the danger, and at the same time being competent to perform the duty demanded from her, the fact that she was a minor does not alter the general rule of law upon the subject of employes taking upon themselves the risks which are patent and incident to the employment. (*De Graff* v. *N. Y. C., etc., R. R. Co.*, 76 N. Y. 125; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572, at 585; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396–398; *King* v. *B. and W. R. R. Co.*, 9 Cush. 112.) The learned judge, in delivering the opinion at General Term, while stating that the case was a border one, observes that "it may well be that there were methods of performing the duties which, if duly communicated to the plaintiff, would have avoided the risks of accident."

But the plaintiff in her own evidence says she was instructed as to the methods of performing the duties which she was placed there to discharge; it is only as to the dangers to be apprehended from the machine which she says were never imparted to her.

There seems still to be another answer to this part of the plaintiff's claim, and that is the injury did not occur on account of any act done or omitted on her part because of any want of knowledge or appreciation of the dangers of the machine.

She attempted to straighten out a "lap" in a collar, the further end of which was caught by the machine. Her hand was distant from the rollers the whole length of the collar, and but for the unfortunate and not to be foreseen accident by which her finger was caught in the button-hole, and from which she could not extricate it in time, the plaintiff's hand would not have been caught by the rollers. In the act of trying to straighten out this "lap" at the time she did, it is impossible to hold that such act was the least evidence of a lack of appreciation of or familiarity with the dangers of the machine, and it would have been error to submit such a proposition to a jury.

*Prima facie*, it was a perfectly safe act, and would have so resulted but for this accident, which no human being would have thought of as possible to occur, and it is not admissible, therefore, to say that the injury to the plaintiff arose from any lack of knowledge on her part, even though she had received no instructions from the defendant.

*Third.* The third proposition is not borne out by the facts.

There is no evidence that the father of plaintiff knew that she was going to the defendant's laundry when she first went, or that he knew the character of the service she performed there. It is plain from her own evidence that she went there to obtain employment such as the defendant or his agents might place her at, and she took her turn at this machine, so far as it appears, willingly, and kept it safely for six weeks before she was injured. As there is no basis, in fact, for the plaintiff's claim it is unnecessary to discuss its correctness as a statement of the law.

These are the chief grounds made by plaintiff's counsel for an affirmance of this judgment, and we have examined all that he has urged with very great care and attention. The case is a most important one, certainly to plaintiff, who has,

without any fault of her own, sustained a most terrible and painful and permanent injury, and her case is one that appeals most strongly to the sympathies of every one. But we do not see how this judgment can stand without overthrowing well settled and healthful principles of law.

We think the motion for a nonsuit should have been granted, and for that reason the judgment should be reversed and a new trial ordered, costs to abide event.

All concur, except RUGER, Ch. J., and DANFORTH, J., dissenting.

Judgment reversed.