JOHN CARR, AS ADMINISTRATOR, ETC., OF JOHN D. CARR, DECEASED, APPELLANT, *v.* THE NORTH RIVER CON-STRUCTION COMPANY, RESPONDENT.

*It is not negligence for a railroad company to omit to provide check-chains for gravel trains — or to back such trains instead of drawing them — the rules in force on a completed road are not applicable to a new road which is being constructed.*

Upon the trial of this action, brought to recover damages sustained by reason of the death of the plaintiff's intestate on September 19, 1883, which occurred by the derailment of cars east of Syracuse, upon the West Shore railroad, then in process of construction by the defendant corporation, evidence was given showing that for some months prior to the accident a construction train had left the city of Syracuse, every day at about 6.30 A. M., for the purpose of going to gravel pits, situated at a point about eleven miles east of the city, and distributing gravel along the line of the road between the pits and the city; this train, upon which many of the defendant's workmen were accustomed to ride to the places where they were to work, was pushed by the engine and backed when moving towards the east, and drawn by it when returning towards the city loaded. For some time before the accident a hand-car had usually preceded this train out of Syracuse. On the day of the accident the hand-car stopped at a station where the persons employed on it were engaged in constructing a switch. The persons using the hand-car having failed to remove it from the main track before the arrival of the construction train, as it was their duty to do, the construction train collided with the car, derailing the train and killing the plaintiff's intestate, who was riding to his work with defendant's other employees. The plaintiff claimed that the defendant was negligent in failing to furnish its cars with check-chains.

*Held,* that as the evidence did not show that the absence of check-chains caused or contributed to the accident, and as his intestate must have known that check-chains were not in use upon these cars, the failure of the defendant to furnish them did not justify a recovery in this case by the plaintiff.

That the defendant was not guilty of negligence in moving the gravel cars by puishing them backwards instead of drawing them.

That the action was occasioned by the negligence of the decedent's fellow workmen, and the plaintiff was properly non-suited.

The plaintiff offered to prove that the Rome, Watertown and Ogdensburg Railroad Company had rules providing that conductors should not, under any circumstances, push cars ahead of their engines, except while switching at stations, or in case of gravel trains, when it was absolutely necessary to push cars, and that then the utmost caution must be used, and trackmen must ride on the head car ready to signal engineers at any moment, and instructing section foremen that they must be careful about running hand-cars near the time of any train, and must never take up a rail within twenty minutes of the time of any passenger train.

*Held,* that the court did not err in excluding this evidence. (HARDIN, P. J., dissenting, holding that this evidence should have been submitted to the consideration of the jury,)

APPEAL from a judgment entered upon a nonsuit granted at the Onondaga Circuit.

The action was brought to recover damages sustained by reason of the death of the plaintiff's intestate on the 19th day of September, 1883, which occurred by the derailment of cars east of Syracuse, upon the north bank of the West Shore Railroad, then in process of construction by the defendant.

Upon the trial evidence was given tending to show that the train consisted of thirteen platform cars, locomotive engine and tender, and left Syracuse, bound eastward to a gravel pit some eleven miles distant from Syracuse, leaving Syracuse about six thirty-five in the morning. The train started from Catherine street, and was pushed by the engine which was backing. It carried thirty or forty workmen and tools to be employed in loading gravel, and it made two stops to put off and take on tools, its last stop being at Williams pit, about one mile from the place of the accident. On leaving Williams pit the track curved and then ran in a straight line beyond De Witt station, where the accident occurred, in the neighborhood of a mile therefrom. On leaving Williams pit the engineer blew what is known as a station whistle and proceeded with a speed of from fifteen to twenty miles an hour. As the train was rounding a curve the brakeman at the head end of the train observed a group of men standing on the track, and as the train approached them he discovered that a hand-car was upon the track, and upon nearing the hand-car, and within some 300 feet of it, he gave a signal to the engineer, who at once whistled for down brakes and reversed his engine. The train struck the hand-car. Several of the first cars of the train left the track, and the plaintiff's intestate, who was riding upon the second car from the front, by the derailment of the car received injuries which caused his immediate death. He was a boy of about thirteen years of age and had been engaged in carrying water for the men engaged in shoveling gravel. The hand-car gang started the car ahead of the train, and the train followed behind running at the rate of some twenty miles an hour. After the hand-car reached De Witt the foreman and men left it and the boy backed it, in a westerly direction, toward the train to a switch where work was being done. When the hand-car neared the switch the train appeared in sight, and thereupon three men and the boy attempted

to lift the car laden with tools from the track. The other men had been left further east. It seems the boy's strength failed him and the hand-car was caught by one of the rails. No signal was given to the approaching train, nor was there any flag upon the hand-car.

During the trial the plaintiff offered to show by the assistant superintendent of the western division of the Rome, Watertown and Ogdensburg Railroad, that he was familiar with the rules adopted by that road upon the subject of pushing cars at the head of engines, and that among its rules, that road had one which was as follows: "98. Conductors will not under any circumstances, push cars ahead of their engine except while switching at stations, or in case of gravel trains, when it is absolutely necessary to push cars, and then the utmost caution must be used, and trainmen must ride on the head car, ready to signal engineers at any moment." Also to prove Rule 220 which was as follows, viz.: "Section Foremen: 220. They must be careful about running hand-cars near the time of any train, and must never take up a rail within twenty minutes of the time of any passenger train." The evidence so offered was excluded and the plaintiff took an exception.

The following evidence was given by one Vrooman, who had had many years of experience in connection with railroads, upon the subject of check-chains, after the plaintiff had shown that none were in use upon the train in question. He said: "My experience has been that where a car leaves the track, safety-chains holds the truck up and keeps the car right along the track. It often holds the car with a broken journal; I mean it will keep it right along the track with safety-chains, or guide-chains as I call them, right along the track. These trucks are connected with the body of the car with a single pin. While the car remains on the track, of course the truck is kept straight; when the truck gets off the track there is nothing to keep it, and if there were no safety-chains, it will turn right around on a pivot just the same as a wagon. These chains serve to keep the truck in its position when it gets off the track, or where the journal is broken."

At the close of the evidence, the court intimated its intention to grant a nonsuit in response to a motion made for that purpose. The plaintiff asked, among other things, to have the case submitted to the jury upon the following grounds, viz.: (1.) "Upon the question

as to whether or not the defendant was negligent in not furnishing proper cars, or in the fact that it used in the operation of its road, cars which did not have safety-chains." Also as "to whether or not the fact that defendant had cars which had no safety-chains, contributed to the accident which is complained of in this case." (2.) " As to whether or not the defendant properly operated its railroad under the circumstances of the case in the manner which has been detailed in the evidence." (3.) " As to whether or not the defendant promulgated proper rules for the conduct of its trains upon this road at the time in question." (4.) " As to whether or not it was negligent on the part of the defendant in sending out this train with thirteen cars upon which these men were conveyed, pushed by an engine from the rear." (5.) " As to whether or not the defendant was negligent in permitting the hand-car to be run out ahead of this train, and that train to follow it closely, pushed in the manner described in the evidence."

The requests were severally refused and an exception taken, and the plaintiff nonsuited.

*Stone, Gannon & Petit,* for the appellant.

*Alexander & Green,* for the respondent.

FOLLETT, J.:

Appeal from a judgment, entered upon a nonsuit and heard upon a case containing all of the evidence.

In September, 1883, the West Shore railroad was being constructed by the defendant, a New Jersey corporation. John Carr, the plaintiff's son and intestate, aged thirteen years, was employed by defendant to distribute drinking water to the workmen. For some months prior to the accident, a construction train had left the city of Syracuse every day at about 6.30 A. M., for the purpose of going to the gravel pits near Kirkville and about eleven miles east of the city, and distributing gravel along the line of the road between Kirkville and the city. Many of defendant's workmen were accustomed to ride on this train to the places where they were to work during the day. For some time before the accident a hand car had preceded this train out of Syracuse. As before stated, the

road was uncompleted, and like all roads did not and could not provide a turn-table at gravel pits, and, as is customary with all roads, backed the train when unloaded and drew it when loaded.    As this train was engaged in drawing gravel from Kirkville west and towards Syracuse, it, according to custom, was backed when it was moving from Syracuse east towards Kirkville.    September 19, 1883, this train was being backed east from Syracuse to Kirkville in the usual way, and was preceded by the hand-car as it had been for a long time.    The hand-car stopped at De Witt, where the persons employed on it were engaged in constructing a switch.    It was the duty of the persons using the hand-car to remove it from the main track before the arrival of the construction train, but they did not, and the construction train collided with the hand-car, derailing the train and killing plaintiff's intestate, who was riding to his work with defendant's other employees.

The plaintiff alleges that defendant was negligent : (1.) In backing, instead of drawing the work-train.    (2.) In not furnishing its cars with check-chains.    (3.) In not establishing proper rules for conducting its business.

It is apparent, we think, that the first ground is untenable, for it would be unreasonable to have required defendant to maintain a turn-table at each gravel pit, and also at each place where the train was unloaded, so the train had to be backed one way, and it was safer to back it when unloaded and draw it when loaded, than to reverse the process.    The plaintiff, his intestate and all of defendant's employees knew, from daily experience, how the train was moved, and they accepted of the hazard.

The evidence does not disclose that the absence of check-chains caused or contributed to the accident, besides the plaintiff, his intestate and defendant's employees must have known that check-chains were not in use upon these cars.

The plaintiff has not pointed out what rule should have been established which was not, that would probably have prevented the accident.    The plaintiff's evidence shows that rules were established, but what they were, whether sufficient or insufficient, does not appear.    " The conductor gets rules right along ; I have seen the conductor have orders ; they are always printed-type written, all the orders I got ; I never saw any printed rules or regulations posted up

on the cars, and never saw any in the hands of any of the other brakemen."

The plaintiff offered to prove that the Rome, Watertown and Ogdensburg Railroad Company had the following rules: " 98. Conductors will not, under any circumstances, push cars ahead of their engine, except while switching at stations, or in case of gravel trains, when it is absolutely necessary to push cars, and then the utmost caution must be used, and trainmen must ride on the head-car ready to signal engineers at any moment." Section Foremen: " 220. They must be careful about running hand-cars near the time of any train, and must never take up a rail within twenty minutes of the time of any passenger train."

The Rome, Watertown and Ogdensburg railroad was a completed road, and operated as such. Rule 98 permits gravel trains to be pushed, and provides that, in such a case, a trainman must ride on the head car. That was exactly what was done on this occasion as the plaintiff proved. Whether this was in pursuance of a standing rule of the defendant was not proved or disproved. The only part of rule 220 applicable to this case is, "they must be careful about running hand-cars near the time of any train." The remainder of the rule is not important, for the defendant was not engaged in operating a completed road and in replacing rails in its track. Whether there was any rule upon this subject does not appear. It is apparent that upon a completed road definite and permanent rules may be established for the government of employees, which can be printed and furnished for their instruction; but when a road is in process of construction rules which would be proper for a completed road, or for part of a road in process of construction, might be quite unfit for another part of the road. No error was committed in rejecting these rules.

That the accident was caused by the negligence of a fellow-workman of the plaintiff's intestate is quite apparent. Haver testified: " The train was run on the day in question as it had been run for months prior to that time; the same as we always did." Cary testified: " I believe at that time we whistled one long toot for brakes; from the time of that toot, when we whistled at that thirteen hundred and odd feet from the place of this accident, the men at the hand-car had ample time to have lifted the car off the track; I know the heft

of hand-cars; two men can carry it off the track, one at each end; four men can do it easily; the front end of the train was in full view of the place of the accident, when within thirteen telegraph poles, when the whistle was given; the men at the hand-car could easily have seen the train; it was the engine that was thirteen telegraph poles from where the hand-car was when first discovered and not the front end of the train; the train was thirteen cars long; the cars are about thirty-three feet long." Dillon testified: "I think that was ample and sufficient time for the men to have removed this hand-car from the track if they had taken it right up, four of them, if they did not get excited, scared; there is no trouble whatever about four men handling a hand-car; two men could lift it bodily; four men, of course, could do it quicker and more easily."

Upon the whole case we think it clearly appears that the accident was occasioned by the negligence of the decedent's fellow-workmen and that the plaintiff was rightly nonsuited.

MARTIN, J., concurred.

HARDIN, P. J. (dissenting.):

In *Abel* v. *Delaware and Hudson Canal Company* (103 N. Y., 581), it was said by the court that "the law imposes upon a railroad company the duty to its employees of diligence and care, not only to furnish proper and reasonably safe appliances and machinery, and skillful and careful co-employees, but also to make and promulgate rules, which, if faithfully observed, will give reasonable protection to the employees."

From the evidence in the case before us, we are lead to infer that the defendant had adopted no rules in respect to the operation of a hand-car upon the track in advance of the train in question, but on the contrary had, for a considerable length of time, permitted the hand-car on divers days to leave the city of Syracuse on the track to be occupied by the train in question. "The train was used as a gravel train, drawing gravel in from Kirkville in the process of the construction of the road." "On this train there were five or six gangs of laboring men and trainmen." "A hand-car used to go down the road mornings; they were always down there ahead of us; they were always down there; we saw their car down there; I did not see the hand-car or its men start that morning; they always

started before us; was down at the engine house and we started in Catherine street; the engine house is about three-quarters of a mile, I guess, from Catherine street, east."

It is apparent that it was the custom of the train in question, to move from the station at Syracuse towards Kirkville, a distance of eleven miles, every morning about half past six. If the defendant had had in force a rule forbidding the presence of a hand-car upon the track within reasonable length of time, it is probable the accident in question would not have occurred. If the time excluding the presence of a hand-car, had been that named in the Rule 220 of the Rome, Watertown road, it is probable the accident in question would not have occurred, although that rule does not say that a hand-car shall not be in advance of a train within a specified time, it does declare that persons operating a hand-car "must be careful about running hand-cars near the time of any train." It is not unreasonable to infer that the adoption of such a rule and enforcement of it, would have excluded from the track which was being traversed by the gravel train, the hand-car which caused the accident to the intestate. The Rule 220 just alluded to, prohibits taking "up a rail within twenty minutes of the time of any passenger train," if that length of time had been carried into a rule forbidding the presence of a hand-car upon the track where the intestate received his injuries, the collision would have been avoided. Whether or not such a rule should have been adopted for the protection of the employees of the defendant, by the defendant, the jury were not permitted to inquire.

We think, upon the evidence before the court, the trial judge was not warranted in holding, as a matter of law, "that the rules of the defendant were proper and sufficient for the protection of its employees, nor in holding that it should not have taken greater precaution by rules or otherwise for their safety." (*Vose* v. *The Lancashire and Yorkshire Railway Co.*, 2 H. & N., 728; *L. S. and M. S. R. R. Co.* v. *Lavalley*, 36 Ohio St., 221; *Pittsburgh, Ft. Wayne and Chicago R. R. Co.* v. *Powers*, 74 Ill., 344; *Cooper* v. *Central Railroad of Iowa*, 44 Iowa, 134; *Slater* v. *Jewett*, 85 N. Y., 61; *Sheehan* v. *N. Y. C. and H. R. R. R. Co.*, 91 id., 332; *Dana* v. *N. Y. C. and H. R. R. R. Co.*, 92 id., 639.)

We are also of the opinion that the facts relating to the operation of the train in conjunction with the use of the hand-car, and the absence of any rule or regulation adopted by the defendant to control its movements, should have been submitted to the jury, and that it is a question of fact whether the defendant had been guilty of negligence in that regard. (*Abel* v. *D. and H. C. Co.*, 103 N. Y., 586.) We do not see any negligence in the defendant in moving the gravel cars by an engine that was pushing them, which gives the plaintiff a right of action, nor are we of the opinion that the absence of check-chains was the probable cause of the accident in question. The absence of the check-chains was visible to the employee, and when he entered the employ of the defendant he assumed the risk and perils incident to the use of the machinery and property of the defendant, as it was without the provisions of check-chains.

In *Ladd* v. *New Bedford Railroad Company* (119 Mass., 412), it seems to have been held that any risks arising from the want of check-chains, was an incident to the plaintiff's employment and knowingly assumed by him, and for which he therefore could maintain no action against the company. It is not like the case in which the cars were temporarily defective in which the master may be liable. It may be said the intestate " assumed the usual risks and perils of the employment, and such as were incident to the use of this machine (train and cars) in its then condition so far as such risks were apparent." (PECKHAM, J., in *Hickey* v. *Taafee*, 105 N. Y., 35.)

We think there is no force in the suggestion made at the trial that a different rule appertains to a completed road, and one in the process of construction so far as the duty of master to his servant is concerned. Proper care and thought, and proper rules should be adopted for the protection of the employees, whether the enterprise in which they are engaged is in embryo or whether it is established and completed. (*Newell* v. *Ryan*, 40 Hun, 286.) We are of the opinion that the learned trial judge committed an error in holding the case from the jury.

Judgment is reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.