RIKEL *v.* FERGUSON.

(*City Court of Brooklyn, General Term.* June 24, 1889.)

MASTER AND SERVANT—NEGLIGENCE OF MASTER.

Plaintiff, a young man between 17 and 18 years of age, who had worked for several years in a carriage factory, entered defendant's employment to learn the carpentry business. In the middle of defendant's shop was a large planer with a feeding table at one end. In the middle of the planer was a revolving axle, to which were attached four knives extending upward, just even with the top, which was open. Out of the opening, shavings were cast, by the rotary motion of the knives, against "a sort of bonnet projected over the knives an inch and a half." Plaintiff had been employed about this machine for a couple of months, shoveling shavings and removing plank. On the day of the accident a number of the planks had been planed on one side, and piled beside the planer to be planed on the other. Plaintiff, in going from one end of the planer to the other, climbed upon the plank, instead

of passing along the passage-way, and slipped, and, throwing out his hand to catch himself, he came in contact with the knives, inflicting the injury sued for. He testified that he knew that, if he fell on the knives, he would get hurt. When he mounted the pile of plank he was told to get down, or he would be killed. *Held,* that a nonsuit was properly granted, as there was no breach of duty on the part of defendant, either in furnishing safe machinery, or in giving proper instructions to inexperienced employés.

On exceptions from trial term.
Argued before VAN WYCK and OSBORNE, JJ.
*Hirsh & Rasquin,* for appellant.   *Albert G. McDonald,* for respondent.

VAN WYCK, J.   This action was brought to recover for injuries which plaintiff alleges he sustained through the negligence of defendant, his employer.   The trial court granted a nonsuit, and directed the exceptions to be heard, in the first instance, at general term.   It appears that defendant carried on the carpentry business; and, in one room of his establishment, he had, for use in such business, several machines for tonguing and grooving flooring, sawing material, planing plank, etc., run by steam power.   The planing machine was about four to five feet high, three and a half feet wide, four feet long, with a feeding table, at one end, about four feet long, and about three feet above the floor.   In the middle of the planer was a revolving axle, to which were attached four knives extending upwards just even with the top thereof.   The top was open, and out of this opening the shavings were cast, by the rotary motion of the knives, against "a sort of bonnet projected over the knives an inch and a half," from which they glanced on the floor at the tail of the planer.   The plank was run through on the feeding table, each operation planing one side thereof.   The plaintiff, having already worked two years in a carriage factory for the purpose of learning that trade, and owning his own chest of tools, entered defendant's employment with the object of learning his trade, and with the understanding that he should make himself generally useful in respect to anything he was ordered to do about defendant's establishment.   At the time of the accident, he was between 17 and 18 years of age, and had, for two months before it, according to the evidence of his own witnesses, worked almost daily around the machines, hearing their "buzzing noise," and shoveling away the shavings, and removing material from the room.   On the day of the accident, a number of plank had been run through the planer and piled up by one of the workmen, along the side thereof, about four or five feet high, to be taken therefrom and run through again to plane the other side thereof.   He says he was directed to help the man feeding the machine.   His own witnesses differ somewhat in their story of the occurrences after the plank had been piled up at the side of the planer, and just before the accident.   He was at the tail of the machine, and started to the other end for some purpose.   One story is that, on being called, he climbed to the top of this pile of plank to go there, instead of passing along the passage-way on the other side, and, on his way, he slipped, and, throwing out his hand to catch himself, brought it in contact with the revolving knives, and was thus injured.   The other story is that he was helping the feeder to remove the plank from the pile to the feeding table; that, when he had helped with one or two planks, he mounted the pile to raise a heavier one, and the plank under his left foot slipped, and he fell, and, in throwing his hand out to catch himself, it came in contact with the blades.   His own witnesses testify that, when he mounted this pile, he was told to get down, or he would be killed.   This is not denied by him or any one.   It is alleged in the complaint that defendant neglected to furnish safe machinery and appliances, and also failed to inform plaintiff of its dangers.   Now the contention of appellant is that the testimony establishes a *prima facie* breach of these two duties, upon which can be predicated negligence of defendant resulting in injury to plaintiff; that therefore it was error to take the case from the jury.   We will consider

the alleged neglect of duty in the following order: *First*. The duty of furnishing safe machinery and appliances. *Second*. The duty of giving proper instructions to the inexperienced employé.

The counsel of appellant and respondent have cited, both on oral argument and printed brief, *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 268, and appealed to this court to apply the rules of law therein stated to the subject-matter of this case. They differ, not on the law, but on the application thereof to the facts of this case. In this age of multiplicity of books of reports and text-writers filled with conflicting ideas, distinguishing refinements, and doubts of all degrees, this harmony between contending parties, in respect to the rule relied upon by them, is so pleasant and unusual that we cannot refrain from expressing our sense of gratitude to the court of last resort for the benefit conferred upon bench, bar, and litigants when it, in a single opinion, with clearness of discernment, and exact and maxim-like language, has reduced to pure crystals the real saccharine of a master's duties to his servant in respect to the dangers of machinery, found scattered and diffused in a weak solution, in numberless cases distinguished, questioned, conflicting, and confusing. That case, on this branch of the law, relieves clients of doubts, and counsel from labored research among the accumulated volumes of the past. We shall content ourselves with testing the facts of this case in the retort of that case, to ascertain if either of the two crystals of duties alleged to have been broken by defendant are still perfect in form, or shattered. "The duty to furnish safe machinery means, of course, machinery that is safe, considering the use for which it is designed; for, otherwise, very little machinery could be operated." *Hickey* v. *Taaffe*. There is inherent danger in the very nature of almost all machinery, propelled rapidly by steam, to those who are so unfortunate as to have their limbs come in contact with its wheels, rollers, knives, or saws, while in motion; yet these parts, or some of them, may be absolutely essential to the designed use of the machine. Sad as are the accidents resulting from these inherent dangers, yet sadder would be the distress resulting from a law abolishing the use of such machinery, and thereby destroying the largest branch of our industries, affording employment to so many who otherwise would be idle. A reasonably safe and suitable machine must be supplied by the master; that being done, he has fully performed his obligation in that respect. The planer in this case was in perfect repair. It was open at the top. It was as necessary that it should be as that it should have knives. If it was closed entirely, it would not be suitable to planing plank. If closed at the top, it would soon fill with shavings, choking it to a stand-still. It was a style of machine in common use. It was just like the other style of planers except the difference in what the witnesses call a "bonnet,"—an appliance attached, not for the purpose of safety, but to direct the shavings striking it to the tail of the machine. This style had, in the words of one of plaintiff's witnesses, "a sort of bonnet projected over the knives an inch and a half." The other style spoken of had a quarter-circle bonnet. Neither kind of bonnet covered the knives, and neither could nor would protect the hand thrown intentionally or unintentionally on the uncovered portions of the knives. The general rule is that the employé assumes the apparent risks and perils incident to his employment. But the plaintiff insists that the dangers of this machine resulting in his injury were not apparent to one of his age; and that defendant's failure to inform him of them was negligence. He was a young man between 17 and 18 years old; and, prior to entering defendant's employment, he had worked for two years in a carriage factory, and owned his own chest of tools. It must be assumed that he was thoroughly familiar with sharp-edged tools, saws, chisels, adzes, jack-planes, etc., and their effect when applied to the material worked upon. He had worked, according to the testimony of his own witnesses, almost daily for two months around this machinery, including the planer, hearing its "buzzing

noise," and seeing the shavings flying out of the open top, removing materials from the room and shoveling away the shavings. Can it be doubted that he thoroughly knew and appreciated the fact that, if he in any way fell in the opening out of which the shavings were cast, he would be seriously injured? He certainly did, and so testifies as follows: "There were four knives. They were right along on the top of the machine. They were fastened in a revolving axle. * * * When I was working at this machine, before I was hurt, for five minutes or so, and saw those knives going around there, I did know that, if I fell on those, I would get hurt. * * * Before I was hurt, I did know that that was a dangerous machine to fall on. Anybody would know the machine was dangerous. * * * I could know that that was a dangerous machine without anybody telling me, simply by looking with my own eyes, but you could not see the knives very plain, unless you was high up. * * * I knew that, if a person fell and threw out their arm, so that it went on those knives, that they would get cut. I knew that without anybody telling me; that was plain to everybody." From the testimony of plaintiff and his own witnesses it is manifest that, in respect to the dangers of this machine,—the knives and open top,—the plaintiff knew all that the instructions of the defendant would have imparted to him. "This was enough. Being of an age to appreciate, and having full knowledge of, the danger, the fact that he was a minor does not alter the general rule of law upon the subject of employés taking upon themselves the risks which are patent and incident to the employment." *Hickey* v. *Taaffe.* This disposes of the main exceptions on this appeal, but the plaintiff requested to go to the jury on the question that defendant had not furnished competent fellow-servants. There is not a particle of testimony tending to show that defendant failed to use reasonable care in the selection of the plaintiff's fellow-servants, or that they were not reasonably competent and skillful. Then, again, the plaintiff did not allege any neglect in this respect. The plaintiff asked to go to the jury on the question whether or not the boards were not negligently piled, and whether or not this pile of boards was not an unsafe appliance to the machine. We have been unable to find any testimony in the case tending to show that the boards were negligently piled; but, if they were carelessly piled, it was done by a fellow-servant of plaintiff, and upon that alone the master could not be held. How a temporary pile of plank made of the plank just run through the planer, to be removed in a few moments, can be called or thought to be an appliance of the planing machine, is inexplicable to us. For these reasons the exceptions must be overruled, and judgment ordered for defendant, with costs.

OSBORNE, J., concurs.