SAMUEL KOREN, Respondent, v. THE NATIONAL CONDUIT AND CABLE COMPANY, Appellant.

*Negligence — right of a servant to rely upon his master's instruction as to the manner of using a machine — improper instructions by the master — assumption of obvious risk.*

In an action brought by a servant against his master to recover damages for personal injuries sustained by the servant, while trying to shift the belt of a machine which he was engaged in operating from the tight to the loose pulley, it appeared that the machine in question was not supplied with a belt shifter although such a device was in almost universal use upon similar machines throughout the country; that the plaintiff had worked around factories for almost sixteen years, but had never before worked at a machine propelled by a belt.

The method by which the servant attempted to shift the belt on the occasion of the accident was clearly dangerous, but the evidence tended to show that at the time he was put at work upon the machine, two or three weeks prior to the accident, his foreman instructed him to adopt this method.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That, although the plaintiff must have known of the danger involved in attempting to shift the belt in the method in question, he was entitled to rely upon the instructions given him by the foreman.

Where a master instructs a servant in the manner of performing a dangerous duty and such instructions are improper or where he instructs the servant to work in a dangerous manner, although the risk incident thereto is apparent, the servant, especially when of tender years or of the lower grade of intellectual development, may rely upon the master's presumed superior knowledge in the premises and perform the duty according to such instructions without being held to be deprived of his right of action against the master under the doctrine of assuming an obvious risk.

APPEAL by the defendant, The National Conduit and Cable Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 28th day of March, 1902, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 10th day of April, 1902, denying the defendant's motion for a new trial made upon the minutes.

*John Ford* [*Henry L. Maxson* with him on the brief], for the appellant.

*James M. Hunt* and *George N. Rigby*, for the respondent.

Hooker, J.:

The plaintiff, a man of middle age, unable to speak English, a resident in this country for sixteen years, was put to work by the defendant operating a wire drawing machine. By this machine wires were drawn out to a greater fineness, and much power was required for its operation. This power was transmitted from a revolving pulley near the ceiling to a pulley at the right end of the machine, as the operator faced it, by means of a belt. Approximately midway between the pulley at the ceiling and the one at the machine the belt was made to cross upon itself, presenting somewhat the appearance of an X, and by means of which the two pulleys moving in the same plane revolved in opposite directions. The belting came from the ceiling at an angle of approximately forty-five degrees, and the machine pulley revolved in the direction of the movement of the hands of a watch, as one might look at it from a point opposite the end of the machine. This arrangement created an open space at the end of the machine in the vertical plane bounded by belting and pulley, nearly in the shape of an isosceles triangle, whose base was between a foot and eighteen inches, and whose altitude was about two feet. On the same axis with this machine pulley, further out, was fixed another precisely similar, except that its hub was always loose on the axis or shaft, with the result that when the moving belt passed around the rigid pulley the machine operated, but when around the loose one it was at rest. For the purpose of transferring the belt from the tight to the loose pulley and back, there is a device known as a belt shifter, whose use is attended with no danger whatever. The evidence shows that in wire-drawing machines throughout the country the almost universal practice is to supply pulleys of this character with belt shifters. This machine was not equipped with a belt shifter.

The plaintiff had no trade, but had worked around factories for almost sixteen years, but never before at a machine supplied with power by means of a belt. On the 25th day of June, 1901, he was injured in trying to shift the belt from the tight to the loose pulley; he was thrown to the floor, his left arm severely hurt and skull fractured, as a result of which he probably will be permanently disabled. When he was put to work at this machine, between two and three weeks prior to the accident, the foreman showed him

what to do and how to do it.   He says on direct examination: " The foreman took me to the machine and showed me the wire, how the wire ran through the machine, and then on the other end he showed me the wire winds around on a big thing like a wheel, and it winds around that; then he showed me how the belt works, and he told me when I stop work to throw the belt off at six o'clock. Q. Did the foreman put the belt off and on in showing you how to do it?   A.   He took a piece of board about two inches wide, and showed me to pull to myself, toward me, and pull the belt off on the loose pulley.   *   *   *   Q.   What did he do in showing you how to start the machinery?   A.   He took the stick and showed me to pull it off or pull it down when I wanted it to run.   Q.   In showing you how to stop the machinery, did he pull the belt with the stick towards him?   A.   He showed me how to stop and how to start, and stepping towards himself he pulled the belt off, and running the machine put its on (*sic*) from him.   *   *   *   I did just as the foreman had showed me how to do, when I wanted to stop the machine.   *   *   *   At the time I was injured   *   *   *   I proceeded to stop the machine just as the foreman had told me to do and how to do it.   *   *   *   When I had the stick on the far side I only remember when the stick was caught from me and I was pulled in and pulled out, and that is all I remember."   On cross-examination he testified: " When I shifted the belt I put a stick against it and pressed."

This is the only evidence in the plaintiff's case as to what his instructions were or the manner in which he was hurt.   Had the defendant rested its case at this point, there might have been another question here, but defendant's witnesses supplied evidence of the manner in which the accident occurred.   They testified that the plaintiff, standing opposite the pulley and facing it, put his left arm into and through the triangular space described above, and the right arm over the upper segment of the belt, grasping each end of a small stick for the purpose of pulling the belt from the tight to the loose pulley.   While he was engaged in that effort, the witness says, " where the belt is sewed there I supposed it picked his stick.   I see him go around down to the floor."   From the nature of the injuries to his left arm it must be assumed that it was caught in some manner

between the upper segment of the belt and the surface of the pulley. The foreman testified that putting the arm through the space described is very dangerous, but that little danger attended moving the belt if the arm was not inserted there. The plaintiff says he was making the shift at the time he was hurt, just as the foreman had instructed him; the foreman denies telling him to insert his arm into that dangerous space. The defendant moved to dismiss the complaint at the end of the plaintiff's case, and again at the close of the evidence. These motions were denied and the case submitted to the jury, who found for the plaintiff, and the defendant's motion for a new trial was denied.

The chief question of fact in this case is whether the foreman gave the plaintiff the instructions he states, and this question was fully and fairly submitted to the jury, and their findings resolve the question of fact in plaintiff's favor.

It has been well settled that where a danger attending the operation of machinery is plain and obvious and known to the servant, no legal obligation rests upon the master to caution or instruct him in relation thereto. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *White* v. *Wittemann Lith. Co.*, 131 id. 631.)

To place one's arm in the space described in the evidence in this case was clearly dangerous; the risk must have been apparent to the plaintiff; he knew it required much power to operate this machine, that the pulley and belt were both in rapid motion, and he could see that if anything became caught between the belt and surface of the pulley, it would be drawn in and almost immediately expelled with great violence. Under the rule stated above, if the plaintiff had put his arm into the space without having received any instructions whatever from the defendant, he probably would have found himself without redress, but the defendant undertook to instruct him in relation to the matter and, as the fact has been settled, directed him to effect the shifting of the belt in a dangerous and unsafe manner. Where the master assumes to instruct the servant in the manner of performing a dangerous duty, and such instructions are improper, or where he instructs the servant to do work in a dangerous manner, though the risk of it is apparent, the servant, especially when of tender years or of the lower grades of intellectual development, may rely upon the master's presumed superior knowl-

edge and experience in the premises, and perform the duty according to such instructions, without being held to be deprived of his right of action against the master under the doctrine of assuming an obvious risk. Such seems to be the rule. (*Owens* v. *Ernst,* 1 Misc. Rep. 388; 49 N. Y. St. Repr. 640; affd., 142 N. Y. 661.) Here it appears, it is true, that the plaintiff must have known of the danger, but he also knew that he had been instructed to do the work in that manner, and he had the right to rely upon the defendant's teachings.

We have examined the other exceptions in the case, and are of the opinion that they present no substantial error.

The judgment and order appealed from should be affirmed, with costs.

Present — GOODRICH, P. J., BARTLETT, HIRSCHBERG, JENKS and HOOKER, JJ.

Judgment and order unanimously affirmed, with costs.