ELLEN I. BALLARD, as Sole Executrix of the Last Will and Testament of WILLIAM P. BALLARD, Deceased, Respondent, *v.* THE HITCHCOCK MANUFACTURING COMPANY, Appellant.

*The duty of a manufacturer to his employees to furnish boilers suitable and fit for the purpose to which they are to be applied, stated — when it is error to charge that he is bound to apply all known tests, whether they are known to him or not.*

In an action, brought by the plaintiff, as executrix of William P. Ballard, who was killed by the explosion of a steam boiler owned and used by the defendant, a corporation organized for manufacturing purposes, which carried on and conducted an extensive business at Cortland, it appeared that the deceased had,

for some years prior to the accident, been in the defendant's employ, and that his duties frequently called him into the boiler-room where the explosion occurred. Upon the trial of the action evidence was given tending to show that the defendant had a large steam boiler made for it by a firm of the city of Elmira, which was extensively engaged in the manufacture of boilers, and was of good credit and reputation in its avocation and business; that this boiler was set up in the defendant's manufactory and used down to the time of the explosion. Late in the fall of 1886, and in the middle of February, 1887, it having been discovered that steam escaped from the middle of the horizontal seam on the left-hand side, and from the seam on the top of the boiler, an experienced person was immediately called in by the defendant, who remedied the difficulty by calking. Evidence was also given tending to show that it was discovered, after the explosion, that the boiler was made from an inferior quality of iron, and that it was improperly built, in this, that in riveting the plates the holes were not properly drilled or the rivets properly set.

Upon the trial the defendant requested the judge to charge that if the jury find that the explosion was caused by defects in the boiler which the defendant did not know of, and it used reasonable care to ascertain all defects, then the verdict must be for the defendant. This request was refused by the court, and the judge instructed the jury that "if the defects in this boiler were such as were known or discoverable by examination, or the application *of known tests*, then the defendants are chargeable whether they knew it or not."

*Held*, that, in refusing the instructions asked for, and in charging the jury as aforesaid, the court erred.

That while the defendant was required to exercise reasonable care and diligence to ascertain that the boiler was reasonably safe and fit for the purposes to which it was to be applied, yet as the evidence given upon the trial showed that the defendant had obtained the boiler from reputable manufacturers, and that the inferior quality of the iron could only be discovered by cutting or breaking it, the defendant was not required to make this test in order to free itself from the charge of negligence.

The defendant's counsel also requested the judge to instruct the jury that if the jury find that the accident was caused by the unskillful manner in which the riveting was done in the boiler by the manufacturer, and this defective riveting could not be discovered by reasonable inspection, and was unknown to the defendant, that negligence cannot be imputed to the defendant for such unskillful riveting. The court denied this request and said: "I say, if it could be discovered by examination and the application of known tests."

*Held*, that, as the evidence given upon the trial tended to prove that the defect claimed to exist was that the riveted holes were not drilled true, and that the rivets did not properly fit them, and that this defect was discoverable only by the taking of the boiler apart and by removing the rivets, as the heads and battened ends entirely covered the defect from view, that the refusal to charge and the instructions given were erroneous.

That, in the absence of evidence as to what "known test" it would have been proper to apply or resort to, the jury were left in confusion and doubt as to their

duty, and were improperly left at liberty to determine for themselves what test the defendant was bound to apply and what inspection it was bound to make to bring itself fully up to a discharge of the obligations it owed the deceased.

APPEAL from a judgment entered upon the verdict of a jury, after a trial at the Cortland Circuit, in the office of the clerk of Cortland county, February, 2, 1888, and, also, from an order denying a motion for a new trial, made on the minutes of the justice presiding at the trial, entered in the same office on the same day.

*Duell & Benedict,* for the appellant.

*Franklin Pierce,* for the respondent.

KENNEDY, J.:

The plaintiff's testator, William P. Ballard, was killed by the explosion of a steam boiler owned and used by the defendant, on the 30th day of May, 1887. The defendant was a corporation organized for manufacturing purposes, and carried on and conducted an extensive business at Cortland, N. Y., and had for some years prior to the accident. Deceased was in its employ, and had been for a considerable time before his death. His duties frequently called him into the boiler-room where the explosion occurred, and he was familiar with the boiler, the manner of its use and its surroundings.

About the month of December, 1884, the defendant procured a large steam boiler, of some 100 horse power, to be built for it by B. W. Payne & Co., of the city of Elmira. This firm was extensively engaged in the manufacture of boilers, and was of good credit and reputation in their avocation and business. The boiler was set up in the defendant's manufactory and commenced being used by it about that time, and continued to be so used down to the time of the explosion. The engineer and those employed by the defendant in and about the running and operating of the boiler were, so far as the evidence shows, competent for the places they filled, and the explosion was in no way chargeable to any negligence on their part. While the boiler was being used, and late in the fall of 1886, it was discovered that steam escaped from the middle of the horizontal seam on the left hand side and near the second plate on top. An

experienced person was immediately called in by the defendant, and remedied the difficulty by calking. It appeared that it was not unusual for steam to escape at the seams, and that the proper remedy was to calk. In the middle of February, 1887, steam was again discovered escaping from the seam on top of the boiler, and again a competent person was called in, and again calked it at that place. There is no evidence that steam of consequence escaped after that. In the month of April, before the explosion, the boiler was inspected and examined quite thoroughly by persons qualified for the duty, and found to be all right.

Evidence was given tending to show (as discovered after the explosion) that the boiler was made from an inferior quality of iron, and that it was improperly built, in this, that in riveting the plates the holes were not properly drilled or the rivets properly set. It also appears that, so far as shown upon the surface, the iron appeared good, and that its defective character could only be discovered by cutting or breaking, and the defective riveting only by taking them out, because the heads entirely hid the holes from view.

The boiler was inspected and examined by experienced men, giving their attention especially to the business, as often as once in four months during the whole time of its use, and pronounced safe. How the explosion occurred, or what caused it, does not appear. Some evidence was given tending to show that the defendant, through its officers, had personal knowledge of the leakage of steam, and some other claimed defects in the boiler. The ordinary life of a steam boiler, properly cared for, is from twenty to twenty-five years.

Upon submitting the case to the jury, the learned judge, among other things, instructed them, "if the defects in this boiler were such as were known or discoverable by examination or the application of known tests, then the defendants are chargeable whether they knew it or not." To this the defendant excepted. The defendant requested the following instructions: "If the jury find the explosion was caused by defects in the boiler, which the defendant did not know of, and they used reasonable care to ascertain all defects, then the verdict must be for the defendant." This request the court refused, remarking that he would adhere to the rule before stated. In connection with this matter, the defendant also requested the following instructions to the jury: "If the jury find that the

accident was caused by the unskillful manner the riveting was done in the boiler by the manufacturer, and this defective riveting could not be discovered by reasonable inspection, and was unknown to the defendant, then negligence cannot be imputed to the defendant for such unskillful riveting." This request the court denied, and, instead, the court say : " I say if it could be discovered by examination and the application of known tests." To this and the preceding instructions and refusals the defendant excepted. These several propositions are closely allied.

In refusing the instructions asked for, and in charging the jury as aforesaid, we think the court erred. It is the duty of the master, and forms a part of the contract of hiring, to furnish for the use of the servant, in the business in which he is to engage, proper machinery, materials and appliances necessary for the work to be performed, and also competent and skillful fellow-servants ; and if he fails in these obligations, and an injury occurs to the servant by reason thereof, he is liable, and this is as far as his liability extends. (*Wright* v. *The N. Y. Central*, 25 N. Y., 562; *Besel, Admr.*, v. *The N. Y. Central*, 70 id., 173; *Coughtry* v. *Globe Woolen Co.*, 56 id., 124; *De Graff* v. *The N. Y. Central*, 76 id., 125; *Hickey* v. *Taaffe*, 105 id., 26.) And he is liable for an injury to the servant caused by defective machinery, the defects in which could have been discovered by the exercise of proper care. (*Stevenson* v. *Jewett*, 16 Hun, 210.) In measuring the master's duty and reasonable care which he is bound to exercise, reference must be had to the business in which the employment is had and the exigencies which serve to measure the vigilance required. The master is not absolutely bound to furnish his servant with safe machinery. Such a rule would make the former an insurer, and liable for injuries, though he exercised the greatest diligence and care in the construction or purchase, or in the operation of machinery. The master does not guarantee that the machinery is perfect. The law only requires him to use due care and diligence in its selection and use. The amount of care is measured by the circumstances of each case, dependent upon the kind of machinery used and the risks incident to its use, and the hazard of the business in which it is used. (FOLLETT, J., in *Jones* v. *New York Central*, 22 Hun, 286.)

The deduction from the foregoing rules is that the master is bound

to exercise reasonable care and diligence in the selection of and in the maintaining of machinery used in the business. What is reasonable care depends upon the kind of machinery furnished, and it measured by the hazard attendant upon the conduct of the business. Having these in view, the master is required to exercise reasonable care and diligence to ascertain that the machinery is reasonably safe and fit for the purposes to which it is to be applied. The instructions given, and to which exceptions were taken, went further than this, and required the defendant to show that he had applied all known tests to determine the safety of the boiler. If an obligation as onerous as this rests upon the master, it can only be found in those cases where the hazard is great, and where it is shown that known tests exist and could be applied to discover any latent or concealed defect, and to guard against the results which might reasonably be expected to flow therefrom, and that the master had failed to apply them. (*Cahill* v. *Hilton*, 106 N. Y., 512.) In this case we find no evidence showing what known tests existed which the defendant could apply to discover the alleged defects and which were omitted; and the jury were left to determine of their own volition what tests, in their judgment, the defendant ought to have applied.

Evidence was given upon the trial tending to show that the iron out of which the boiler was constructed was of an inferior quality. This could only be discovered by cutting or breaking. Yet it will hardly be concluded that the defendant, having obtained the boiler from reputable manufacturers, was required to make this test in order to free itself from the charge of negligence by its employee. So, also, it was attempted to be shown, and evidence was given tending to prove, that the sheets of this boiler were not properly riveted, a fact which, if it existed, was only discovered after the explosion. The defect in this regard consisted in the claim that the rivet holes were not drilled true, and that the rivets did not properly fit them. It also appeared that this defect was discoverable only by taking the boiler apart by removing the rivets; that the heads and battened ends entirely covered the defect from view or other inspection. It cannot be claimed that to free itself from negligence in this regard it was defendant's duty, before putting the boiler in use, to make this examination or test. And yet, under the instructions given, the

jury were left at liberty to find that this duty devolved upon the defendant, and having omitted it that it thereby was guilty of negligence. In the absence of evidence as to what known tests it would have been proper to apply or resort to, and that the same were not applied by the defendant, the jury were left confused and in doubt as to their duty, and were at liberty to determine for themselves what tests the defendant was bound to apply and what inspection to make to bring itself fully up to a discharge of the obligations it owed the deceased. While a juryman might think he knew what known tests were, or at least imagine he did, still his ideas in this regard might be far from accurate, and the rights of the party be left to the uncertain elucidation of a confused notion upon the question submitted.

Judgment and order reversed and a new trial granted, costs to abide the event.

All concur.

Judgment and order reversed on the exceptions and a new trial granted, costs to abide event.