JOHN B. KAYE, RESPONDENT, v. THE ROB ROY HOSIERY COMPANY, APPELLANT.

*Facts showing that an employer had furnished an elevator, reasonably safe and suitable, to his employee injured by its fall.*

Upon the trial of an action, brought by an employee of the defendant to recover damages, alleged to have been received through the fall of an elevator in the defendant's factory, it was proved that the elevator moved in a well which had four solid brick walls, in two opposite corners of which were upright posts reaching from the top to the bottom, along each of which an iron rail was fastened, the rails forming the tracks or guides of the elevator and having teeth or sockets into which an automatic safety-clutch attached to the car could spring. The elevator was lifted and lowered by means of a cable which was attached to its top, and extended thence from a pulley to the top of the well, thence horizontally to another pulley, thence down to the third floor, where it was attached to a

drum which, being revolved by an engine, wound up the cable and lifted the elevator, or unwound it and let the elevator descend by gravity.

On the morning of the day on which the accident occurred, while the plaintiff was descending in the elevator, the car suddenly fell to the bottom of the well, and the safety-clutch, which was devised to keep the car from falling in case of any failure of the cable to hold it, did not, upon that occasion, work. No other negligence was proved than that which was chargeable to the defendant for the selection and use of a car with such appliances.

It was shown, by uncontradicted evidence, that the elevator was of a plan and style approved by long and ample use in many other manufacturing and business buildings in various parts of the country; that its selection was carefully considered by the defendant, and made because of its high reputation for excellence and safety, and that it was placed in the building by manufacturers of large experience and high reputation; that it was manufactured of the best material and in the best style of workmanship, and that previous to the accident it had been in daily and constant successful operation, without accident or any interruption which would reasonably cause apprehension of any imperfection in device or safeguards against accident.

*Held*, that the defendant, as the employer of the plaintiff, had discharged the duty incumbent upon it to furnish a machine reasonably safe and suitable, such as is ordinarily used in the business, and which was in good repair, and that he was not liable to the plaintiff for the injuries sustained by him in this case.

*Hickey* v. *Taaffe* (105 N. Y., 26); *Burke* v. *Witherbee* (98 id., 562); *Marsh* v. *Chickering* (101 id., 396); *Stringham* v. *Stuart* (MS.) followed.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Rensselaer Circuit, which was entered in the office of the clerk of the county of Rensselaer on the 9th day of March, 1888, for the sum of $3,305.44; and also from an order, entered in the said clerk's office on March 14, 1888, denying a motion made by the defendant to set aside the verdict made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages alleged to have been received by the plaintiff by the fall of an elevator in the defendant's factory. The plaintiff was in the employ of the defendant as operator of the elevator. His duty required him to ascend and descend with it. While thus engaged on the 10th of March, 1884, the elevator fell a distance of about twenty-seven feet to the bottom of its well in the cellar, carrying the plaintiff with it and causing him the injuries of which he complained in this action. The charge of negligence sought to be sustained upon the trial was that the elevator was of defective device in its appliances for safety. The elevator moved in a well, reaching from the top of the building, which was four stories in height,

to the bottom of the cellar. This well had four solid brick walls, in two opposite corners of which were upright posts reaching from top to bottom, along each of which an iron rail was fastened; the rails forming the tracks or guides of the elevator, and having teeth or sockets, into which an automatic safety clutch attached to the car could spring. The elevator was entered upon each floor through openings for doors. Automatic doors were so contrived that they raised or fell as the elevator approached or passed the floors, leaving the well-opening closed on each floor, except when the elevator filled that part of the opening. The elevator was lifted and lowered by means of a cable, which was attached to its top and extended thence over a pulley at the top of the well; thence horizontally to another pulley; then down to the third floor, where it was attached to a drum, which, being revolved by an engine, wound up the cable and lifted the elevator, or unwound it and let it descend by gravity. Other appliances to regulate its movements existed, but need not be described. The plaintiff could, by means of what is called the shipper, control the upward and downward movement of the elevator and stop it, as he needed. He did not have any control of the engine, but could reverse or suspend the operation of the elevator machinery. As he was descending in the elevator upon the morning of the accident, the automatic door on the second floor had not moved sufficiently outside of the car-space of the elevator, and the bottom of the car struck it and ·the car was stopped. The plaintiff then caused the car to move upward to the floor above, and then resumed his descent. He had been told by the machinist in charge that this was the proper course to take, if such an event occurred. While thus descending, the car suddenly fell to the bottom of the well. The safety clutch was devised to keep the car from falling, in case of any failure of the cable to hold it. It did not work upon this occasion. No other negligence was proved than that which was imputable from the selection and use of a car with such appliances. The cause of the fall of the elevator did not clearly appear from the evidence. Other facts are stated in the opinion.

*Henry A. King,* for the appellant.

*Rufus M. Townsend* and *Charles E. Patterson,* for the respondent.

LANDON, J.:

The jury have, in substance, found that the elevator car fell, because the end of the cable by which it was raised and lowered became unfastened upon the revolving drum upon which the cable was coiled and uncoiled in order to move the car up and down, thereby leaving the car without support; and also because the automatic safety-clutch on the sides of the car — a sort of dog and ratchet device—failed upon this occasion to work and hold the car, as it was expected to do, in case the cable became unfastened or slack. The verdict also condemns the method of fastening the end of the cable to the drum as unsafe, and the safety-clutch as unreliable as a safeguard against possible failures in the cable; and convicts the defendant of negligence in using the elevator thus devised and constructed.

We do not think the verdict should be upheld. The evidence is abundant and uncontradicted that the elevator was of a plan and style approved by long and ample use in many other manufacturing and business buildings in various parts of the land; that its selection was carefully considered by the defendant and made, because of its high reputation for excellence and safety; that it was made and placed in operating condition in its building by manufacturers of large experience and high reputation in that respect; that it was, in fact, manufactured of the best materials and in the best style of workmanship and for a first-class price; that previous to the accident it had been daily in constant successful operation without accident or any interruption which would reasonably cause apprehension of any imperfection in device or safeguards against accident; that immediately after this accident its safe working was resumed without necessity for alteration or repair. Under the authorities the defendant, as the employer of the plaintiff, discharged the duty incumbent upon it to furnish a machine reasonably safe and suitable, such as is ordinarily used in the business and which is in good repair. (*Hickey* v. *Taaffe*, 105 N. Y., 26; *Burke* v. *Witherbee*, 98 id., 562; *Marsh* v. *Chickering*, 101 id., 396; *Stringham* v. *Stuart*, not yet reported.) The plaintiff lays stress upon the fact that the end of the cable upon the revolving drum was not so attached as to be absolutely fastened, but was purposely so attached as to be self detached in certain conditions of the appliances, and that this removable or loosening device was an apparent defect.

It is difficult, without the aid of a diagram or model, to explain the method and working of this attachment. There was a fork-shaped fixture like the letter U at the end of the drum; into this the end of the cable was placed, a knot being in the extreme end of the cable so that the tension upon the cable would draw the knot against the sides of the fork and hold the cable firmly in it, so long as the tension existed and the elevator worked in the usual way. The cable extended from the top of the elevator car to the top of the well, thence over a pulley and then down through the floors to the drum. This forked attachment upon the drum was so devised that in case control of the elevator should be lost, the end of the cable would in certain conditions automatically fall out of the fork, the cable would be loosened and the car would not be pulled through the roof or crushed against it at the top of the well, as would happen unless the cable should be unloosened. This method of attachment and detachment was regarded, by the manufacturer and users of this elevator, as one of its most valuable features. In case the cable should become loose or break or slacken, then the safety-clutch in the sides of the car, which was so contrived as to be held back from the teeth or sockets in the two upright iron rails or tracks which extended from the top to the bottom of the well, would then be released and would spring out and enter these sockets and hold the car and keep it from falling. This safety-clutch was in like manner approved by its successful operation and in the judgment of users and manufacturer. The testimony, on the part of the plaintiff, showed that in some other styles of elevators the cable was clamped fast to the drum, and opinions were given that this was the safer way. But these witnesses did not take into account the danger of pulling the elevator up over the pulley at the top of the well in case of any accidental loss of control over the upward movement of the elevator. The defendant in selecting this elevator endeavored to obtain one which had proper and efficient safeguards against its being carried too high and against its falling. The opinions of fault finders after the accident, as to the merits of the two systems of cable attachment, in no way disprove that abundant care was used by the defendant before the accident. There was much discussion upon the argument as to the probable cause of this accident. The jury evidently attributed it mainly to the slipping of the cable out

of its fork attachment. We are unable to say, from the evidence, that the jury were wrong. If they were right, then the reason why the safety-clutches did not work must have been because they were out of order. But they do not appear to have been found out of order. It is not needful to discuss the question. For the reason that the defendant was not shown to have failed to use all the care his duty required, the motion for a nonsuit should have been granted.

The judgment should be reversed, the motion for a new trial granted, costs to abide the event.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment and order reversed, new trial granted, costs to abide event.