WALSH v. COMMERCIAL STEAM LAUNDRY CO., Limited.

(Superior Court of New York City, General Term.   January 7, 1895.)

MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCES.

Plaintiff was employed in defendant's laundry in feeding a mangle, consisting of two rollers, of which the lower was covered with felt and canvas.  The canvas frequently stretched, so that it wrinkled, and would not do proper work.  The difficulty was obviated by increasing the pres-

sure of the rollers, or by cutting off the ends of the canvas where it wrinkled, and this was done by the persons operating the mangle. It did not appear that there was anything inherently dangerous about it. *Held,* that it was a part of plaintiff's duty to remedy the wrinkling of the canvas, and she could not recover where the wrinkling caused her hand to be caught between the rollers.

Appeal from jury term.

Action by Mary Walsh, by her guardian, Julia Walsh, against the Commercial Steam Laundry Company, Limited. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before FREEDMAN, McADAM, and GILDERSLEEVE, JJ.

C. C. Nadal and Thomas S. Moore, for appellant.

F. B. Taylor and P. R. Towne, for respondent.

McADAM, J. The action was to recover damages for personal injuries sustained by the plaintiff, an employé of the defendant, while working at an ironing machine or mangle operated by steam, the plaintiff's right hand and arm being caught and crushed between the cylinder and the iron or steam chest above it. The machine consisted of a lower cylinder and an upper one, each about 6 feet long and 18 inches in diameter, the lower being covered with thick felt and canvas, and the upper being of iron, which was heated by a steam connection. As those revolved, the goods passing between them were ironed by the pressure. On one side were two girls, who fed the goods in, and on the other were two more girls, who received the goods as they came out. The plaintiff, who was in her seventeenth year at the time, had been employed some six months in the laundry, and had worked at least six weeks feeding the machine when she was hurt. The canvas which covered the lower cylinder was fastened at the sides by springs, but in the middle it stretched from the dampness and pressure, so that frequently it became wrinkled. These wrinkles made the surface of the canvas rough, and goods passed through were not ironed smoothly. The stretched end of the canvas where it was wrinkled was then cut off. This occurred once or twice a week; or, if the wrinkling was slight, the pressure was increased, so that the wrinkles were smoothed out between the cylinders. It does not appear that there was anything inherently dangerous about the machine itself, and the only complaint made is that the linen which surrounded the cylinder wrinkled, and the plaintiff's hand was in consequence drawn into the machine, whereby she suffered the injury for which she sued. It is true there was a tendency for the canvas to become wrinkled. Mr. Roe, the defendant's superintendent, candidly states that he thought this machine wrinkled a little sooner than the other machines owned by the defendant, because, as he explains, the cylinder was more flexible; but it was no more dangerous than the others. The wrinkling on the machines was caused by the operation of ironing. The result was not a desirable one, because the mangle did not iron well when wrinkled. It was expected that the canvas on the cylinder

would stretch and wrinkle, and this occurred from time to time in the course of the work, and the remedy was to tighten the pressure, or, when the linen was badly wrinkled, to cut it off. The girls themselves tightened the pressure when they desired, and usually the canvas was cut off once or twice a week. It is evident, therefore, that the wrinkling was a detail in the performance of the work, to remedy which was part of the servant's duty. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742. The court, in Cregan v. Marston, supra, said:

"It is undoubtedly true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule, and has its qualifications and limitations. One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may be easily remedied by the workman, and are not of a permanent character or requiring the help of skilled mechanics."

Suppose the master had sent for an expert mechanic or machinist to repair this machine, what would have been the result? Not the exercise of the skill belonging to an expert, but a suggestion that the employé smooth down the wrinkle, or, if too large, to cut it off. The defect as well as the remedy for it was open and apparent; so that any one accustomed to the machine could have seen the defect, and known how to remedy it, without the aid of the master, or of any one possessing a knowledge of the technics of machinery.

Again, the master is not under an obligation, under all circumstances, to make use of the safest known appliances and instruments; nor is he responsible for failure to discard those which are not such, and to supply their place with safer ones. 2 Thomp. Neg. 983; Burke v. Witherbee, 98 N. Y. 562; Probst v. Delemater, 100 N. Y. 266, 3 N. E. 184; Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870; Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537; Kern v. Refining Co., 125 N. Y. 50, 25 N. E. 1071; Carlson v. Bridge Co., 132 N. Y. 273, 30 N. E. 750; Harley v. Manufacturing Co., 142 N. Y. 31, 36 N. E. 813. Moreover, a master is not bound to furnish the best-known appliances for the work, for he discharges his full duty when he furnishes those which are reasonably safe (Id.); and, if the danger be as apparent to the employé as to the master, it becomes one of the ordinary risks of the employment, which the servant must be held to have assumed (Gibson v. Railway Co., 63 N. Y. 449; Shaw v. Sheldon, 103 N. Y. 667, 9 N. E. 183; Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358; Hickey v. Taaffe, supra; Appel v. Railway Co., 111 N. Y. 550, 19 N. E. 93; McQuigan v. Railroad Co., 122 N. Y. 618, 26 N. E. 13; Reiss v. Steam Co., 128 N. Y. 103, 28 N. E. 24; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573; Ogley v. Miles, 139 N. Y. 458, 34 N. E. 1059; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Kaye v. Hosiery Co., 51 Hun, 519, 4 N. Y. Supp. 571; Ballard v. Manufacturing Co., 51 Hun, 188, 4 N. Y. Supp.

940; Carlson v. Bridge Co., supra). The most frequent ground on which damages have been given against masters is where the danger was latent, and not discoverable by the servant by the exercise of ordinary care and skill in his department of service, but either known to the master, or such as by the exercise of reasonable care he ought to have known. 2 Thomp. Neg. 979.

Some stress is laid on the fact that attention was drawn to the wrinkles the day before the accident, and it is said a complaint was made that the machine wrinkled. It appears that the forewoman found fault because the work was not properly ironed, and as an excuse it was said that the canvas was wrinkled. Mr. Roe was called to obviate this, and he tightened the pressure. It is said that the wrinkling continued afterwards. But the wrinkling was obvious, and, if there was any danger from it, it was, as before remarked, an apparent one, and such apparent risks must, under the authorities, be held to have been assumed by the employé. Roe was a coservant of the plaintiff. But assuming he was an alter ego, standing in place of the master, the legal result is not changed; for the master was not bound to remain by the employés while performing their labor, for the purpose of keeping out the ever-recurring wrinkles, which they were as capable of remedying as any one else. If there had been any defect in the machinery itself, or if the danger had been latent, and the master had assumed to repair or obviate it, and the employé, supposing that the defect had been repaired and the danger removed, had continued, in reliance on this belief, to perform labor, a different question might have arisen. But where the defect was one liable to appear at any time, was obvious, easily remedied by the employé herself, she cannot shift the responsibility for its existence or the failure to remove it upon the master. Employés must, in the nature of things, be considered to have assumed the risks common to their employment, particularly those arising in the daily use of their appliances, and the accident which befell the plaintiff resulted from one of those risks. Shear. & R. Neg. §§ 184, 208. For all that appears to the contrary, the machine furnished by the defendant was scientifically constructed, was in good order, and performed every function for which it was intended; and the injury which resulted to the plaintiff occurred from a defect arising in its daily use, and of a temporary character, which any employé was capable of remedying. The plaintiff had been in the defendant's employ sufficiently long to have become familiar with the machine in all its details, she was familiar with the very defects of which she now complains, and evidently assumed the risks resulting from them as incidents to her employment. Hickey v. Taaffe, supra; Buckley v. Manufacturing Co., 113 N. Y. 540, 21 N. E. 717; Ogley v. Miles, supra; Crown v. Orr, supra. Under these circumstances, we think there was nothing to go to the jury, and that the defendant's motion to dismiss the complaint should have been granted, and the exception to the refusal is error for which the judgment and order appealed from must be reversed, with costs to the appellant to abide the event. All concur.