MARY WALSH, by Guardian, Respondent, *v.* THE COMMERCIAL
STEAM LAUNDRY Co., Appellant.

(New York Superior Court — General Term, January, 1895.)

Where the defect in machinery which caused injury was one liable to
appear at any time, and was obvious and easily remedied by the employee,
he cannot shift the responsibility for its existence or the failure to remove
it upon the master.

Plaintiff was injured while in the employ of defendant by having her hand
drawn between the rollers of a mangle at which she was at work.    The
accident was caused by a wrinkle in the covering of the lower roller.    It
appeared that the machine itself was not dangerous, but that the cover-
ing of the roller became wrinkled from time to time, the remedy for which
was to tighten the pressure, which was done by the employees, or, if the
wrinkles were very large, by cutting off the stretched portion at the
wrinkled place, which was done once or twice a week.    *Held*, that the
defect in question was a detail in the performance of the work, to remedy
which was a portion of the servant's duty; that it was obvious, and
the risk thereof was one assumed by the plaintiff.

APPEAL by defendant from judgment entered on verdict
of jury in favor of plaintiff and from order denying motion
for a new trial.

*C. C. Nadal* and *Thomas S. Moore*, for appellant.

*F. B. Taylor* and *P. R. Towne*, for respondent.

McADAM, J.    The action was to recover damages for per-
sonal injuries sustained by the plaintiff, an employee of the
defendant, while working at an ironing machine or mangle
operated by steam, the plaintiff's right hand and arm being
caught and crushed between the cylinder and the iron or steam
chest above it.    The machine consisted of a lower cylinder and
an upper one, each about six feet long and eighteen inches in
diameter, the lower being covered with thick felt and canvas,
and the upper being of iron, which was heated by a steam con-
nection.    As these revolved, the goods passing between them
were ironed by the pressure.    On one side were two girls, who
fed the goods in, and on the other were two more girls, who
received the goods as they came out.

The plaintiff, who was in her seventeenth year at the time, had been employed some six months in the laundry, and had worked at least six weeks feeding the machine when she was hurt. The canvas which covered the lower cylinder was fastened at the sides by springs, but in the middle it stretched from the dampness and pressure, so that frequently it became wrinkled. These wrinkles made the surface of the canvas rough, and goods passed through were not ironed smoothly. The stretched end of the canvas, where it was wrinkled, was then cut off; this occurred once or twice a week; or, if the wrinkling was slight, the pressure was increased, so that the wrinkles were smoothed out between the cylinders.

It does not appear that there was anything inherently dangerous about the machine itself, and the only complaint made is that the linen which surrounded the cylinder wrinkled, and the plaintiff's hand was in consequence drawn into the machine, whereby she suffered the injury for which she sued. It is true there was a tendency for the canvas to become wrinkled. Mr. Roe, the defendant's superintendent, candidly states that he thought this machine wrinkled a little sooner than the other machines owned by the defendant, because, as he explains, the cylinder was more flexible, but it was no more dangerous than the others. The wrinkling on the machines was caused by the operation of ironing. The result was not a desirable one, because the mangle did not iron well when wrinkled. It was expected that the canvas on the cylinder would stretch and wrinkle, and this occurred from time to time in the course of the work, and the remedy was to tighten the pressure, or, when the linen was badly wrinkled, to cut it off. The girls themselves tightened the pressure when they desired, and usually the canvas was cut off once or twice a week.

It is evident, therefore, that the wrinkling was a detail in the performance of the work, to remedy which was part of the servant's duty. *Cullen* v. *Norton,* 126 N. Y. 1; *Cregan* v. *Marston,* Id. 568; *Hogan* v. *Smith,* 125 id. 774. The court in *Cregan* v. *Marston, supra,* said: "It is undoubtedly

true, as we have often said, that it is the duty of the master to keep a machine or appliance in order, and that he cannot delegate the duty so as to escape responsibility. But that is a general rule, and has its qualifications and limitations. One of those is, that it is not the master's duty to repair defects arising in the daily use of the appliance for which proper and suitable materials are supplied, and which may easily be remedied by the workman, and are not of a permanent character or requiring the help of skilled mechanics."

Suppose the master had sent for an expert mechanic or machinist to repair this machine, what would have been the result? Not the exercise of the skill belonging to an expert, but a suggestion that the employee smooth down the wrinkle, or, if too large, to cut it off. The defect as well as the remedy for it was open and apparent, so that any one accustomed to the machine could have seen the defect and known how to remedy it without the aid of the master or of any one possessing a knowledge of the technics of machinery.

Again, the master is not under an obligation under all circumstances to make use of the safest known appliances and instruments, nor is he responsible for failure to discard those which are not such and to supply their place with safer ones. 2 Thomp. Neg. 983; *Burke* v. *Witherbee*, 98 N. Y. 562; *Probst* v. *Delamater*, 100 id. 266; *Marsh* v. *Chickering*, 101 id. 396; *Hickey* v. *Taaffe*, 105 id. 26; *Stringham* v. *Hilton*, 111 id. 188; *Dobbins* v. *Brown*, 119 id. 188; *Kern* v. *Refining Co.*, 125 id. 50; *Carlson* v. *Bridge Co.*, 132 id. 273; *Harley* v. *Buffalo Co.*, 142 id. 31. Moreover, a master is not bound to furnish the best known appliances for the work, for he discharges his full duty when he furnishes those which are reasonably safe (Id.); and, if the danger be as apparent to the employee as to the master, it becomes one of the ordinary risks of the employment which the servant must be held to have assumed. *Gibson* v. *R. R. Co.*, 63 N. Y. 449; *Shaw* v. *Sheldon*, 103 id. 667; *Sweeny* v. *Berlin Co.*, 101 id. 520; *Hickey* v. *Taaffe*, *supra*; *Appel* v. *R. R. Co.*, 111 N. Y. 550; *McQuigan* v. *R. R. Co.*, 122 id. 618; *Reiss* v. *Steam*

New York Superior Court, January, 1895.     [Vol. 11.

*Co.*, 128 id. 103 ; *Davidson* v. *Cornell*, 132 id. 228 ; *Ogley* v. *Miles*, 139 id. 458 ; *Crown* v. *Orr*, 140 id. 450 ; *Kaye* v. *Rob Roy Co.*, 51 Hun, 519 ; *Ballard* v. *Hitchcock Mfg. Co.*, Id. 188 ; *Carlson* v. *Bridge Co.*, *supra.*

The most frequent ground on which damages have been given against masters is where the danger was latent and not discoverable by the servant by the exercise of ordinary care and skill in his department of service, but either known to the master, or such as by the exercise of reasonable care he ought to have known. 2 Thomp. Neg. 979.

Some stress is laid on the fact that attention was drawn to the wrinkles the day before the accident, and it is said a complaint was made that the machine wrinkled. It appears that the forewoman found fault because the work was not properly ironed, and, as an excuse, it was said that the canvas was wrinkled. Mr. Roe was called to obviate this, and he tightened the pressure. It is said that the wrinkling continued afterwards. But the wrinkling was obvious, and if there was any danger from it, it was, as before remarked, an apparent one, and such apparent risks must, under the authorities, be held to have been assumed by the employee.

- Roe was a co-servant of the plaintiff. But assuming he was an *alter ego*, standing in place of the master, the legal result is not changed ; for the master was not bound to remain by the employees while performing their labor for the purpose of keeping out the ever-recurring wrinkles, which they were as capable of remedying as anyone else.

If there had been any defect in the machinery itself, or if the danger had been latent, and the master had assumed to repair or obviate it, and the employee, supposing that the defect had been repaired and the danger removed, had continued in reliance on this belief to perform labor, a different question might have arisen. But where the defect was one liable to appear at any time, was obvious, easily remedied by the employee herself, she cannot shift the responsibility for its existence or the failure to remove it upon the master. Employees must, in the nature of things, be considered to

have assumed the risks common to their employment, particularly those arising in the daily use of their appliances, and the accident which befell the plaintiff resulted from one of those risks. Shearm. & Redf. Neg. §§ 184, 208.

For all that appears to the contrary, the machine furnished by the defendant was scientifically constructed, was in good order and performed every function for which it was intended; and the injury which resulted to the plaintiff occurred from a defect arising in its daily use, and of a temporary character, which any employee was capable of remedying. The plaintiff had been in the defendant's employ sufficiently long to have become familiar with the machine in all its details; she was familiar with the very defects of which she now complains, and evidently assumed the risks resulting from them as incidents to her employment. *Hickey* v. *Taaffe, supra; Buckley* v. *Gutta Percha Co.*, 113 N. Y. 540; *Ogley* v. *Miles, supra; Crown* v. *Orr, supra.*

Under these circumstances we think there was nothing to go to the jury, and that the defendant's motion to dismiss the complaint should have been granted, and the exception to the refusal is error for which the judgment and order appealed from must be reversed, with costs to the appellant to abide the event.

FREEDMAN and GILDERSLEEVE, JJ., concur.

Judgment and order reversed, with costs to appellant to abide event.