(55 App. Div. 272.)

JARVIS v. NORTHERN NEW YORK MARBLE CO.

(Supreme Court, Appellate Division, Third Department. September, 1900.)

1. MASTER AND SERVANT—INJURIES—DEFECTIVE APPLIANCES—NEGLIGENCE—
   QUESTIONS FOR JURY—NONSUIT.
   Plaintiff's intestate, employed by defendant, was killed by the breaking of the mast of a derrick used in lifting stone, the mast being powder-posted and dry-rotted in the center. Deceased watched for and answered signals from the bottom of the quarry, and gave them to the engineer, took care of and oiled the derrick, and directed the disposition of slack from the quarry. The mast was constructed of green spruce timber 3½ years before, and covered with two coats of paint, and was apparently sound; the paint making a hard outer surface. Four months before the accident the derrick was moved, and defendant's superintendent and another employé, whose duty was to take care of mill and machinery, examined the mast, stabbed into it with a knife, cut out some shavings, but did not bore into the mast to see whether it was sound in the center, by doing which the rotten condition, causing the breaking, would have been discovered. No subsequent examination was made. Held, that it was error to nonsuit plaintiff, since there was sufficient evidence from which the jury might have inferred that the master had failed in its duty of inspection, and that such omission caused the injury.

2. SAME—DUTY OF MASTER—DELEGATION.

Plaintiff's intestate was injured by the breaking of a derrick used at a quarry while in defendant's employ. He stood at the top of the quarry, watched for signals from below, and gave them to the engineer, oiled the derrick, and directed the disposition of slack from the quarry. The superintendent, when he set deceased at work, directed him how to care for the derrick, and said he would hold him responsible for its proper care. The superintendent inspected the derrick four months before the accident, saw it every day, glanced up and down the mast, looked at the cap at the top, looked at the action of the guys to see that they were right and that the anchorages were sound, it being his duty to supervise such things. *Held*, that the duty of testing the mast to ascertain its interior condition and determining its reasonable safety had not been transferred from defendant to deceased.

3. SAME—ASSUMPTION OF RISK.

Plaintiff's intestate, employed by defendant at a quarry in operating a derrick, was killed by the breaking of the mast, which was dry-rotted in the center, but sound on the surface, and apparently all right. He had no knowledge of its defective condition, which was not discoverable by ordinary observation, and it was not his duty to inspect it. *Held*, that he had not assumed the risk.

Appeal from trial term, St. Lawrence county. ·

Action by Carrie Jarvis, as administratrix of the estate of William W. Jarvis, deceased, against the Northern New York Marble Company, to recover for the death of deceased. From a judgment of nonsuit, plaintiff appeals. Reversed.

The action was brought to recover damages for the death of William W. Jarvis, the plaintiff's intestate, by reason of the alleged negligence of the defendant. The defendant is a domestic corporation owning and operating a marble quarry at Gouverneur, in St. Lawrence county. The plaintiff's intestate, an employé of the defendant, was assisting in hoisting a stone of about 10½ tons weight from the defendant's quarry on September 13, 1897, when he was killed by the breaking and falling of the derrick used for hoisting. The duties of Jarvis, the intestate, were to watch for and answer signals from the bottom of the quarry, to communicate them to the engineer, take care of the derrick, and oil the parts of it necessary to be oiled, to direct where slack should be placed when it reached the surface, and to see that it was taken and placed on the car. The derrick had been in use 3½ years. The mast was 55 feet long, 22 inches thick at the butt, and 15½ inches thick at the top. When the derrick was constructed, the mast was of green spruce timber, just from the woods, and was painted with two coats of paint. The mast was broken in three or more pieces. The exterior, which had been painted, was apparently sound, but within it was powder-posted and dry-rotted, so that where it was broken a knife blade could be run into it to the handle. About four months before the accident the derrick was moved from the place where it had previously been operated to the place where it was used at the time of the accident. At that time Webb, the superintendent of the defendant, with Whitmore, who was in the employment of the defendant, as he says, "taking care of mill and machinery," made an examination of the mast at the base where it went into the socket, also the end that was to go into the socket on top, and found the exterior sound. They "touched it with a knife from the butt to the top," stabbed into it with a knife from the bottom to the top, cut out some shavings, and found them sound. They pulled out with a claw bar the five-eighths inch iron pins which had been driven into the mast for use in climbing, drove them in about a fourth of an inch deeper than at first, and they apparently went into sound wood. They "did not bore into the mast or boom," and "did not take any means to ascertain whether the stick had become dry-rotted in the center." The superintendent testified, "During the four months it was in the last position after it was erected, I did not examine the derrick at any time."

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MER-
WIN, and SMITH, JJ.

Vasco P. Abbott, for appellant.

Watson W. Rogers, for respondent.

EDWARDS, J.   I think that the learned trial court erred in dis-
missing the complaint.   The law is well settled that the master is
liable for an injury to the servant for defects in machinery which
could have been discovered by the exercise of proper care, and a
duty is imposed upon the master to make such reasonable inspec-
tion from time to time as may be necessary to enable him to as-
certain whether the machinery is in a reasonably safe condition for
use by the servant.   Ballard v. Manufacturing Co., 51 Hun, 188, 4
N. Y. Supp. 940; Egan v. Railroad Co., 12 App. Div. 559, 42 N. Y.
Supp. 188; Durkin v. Sharp, 88 N. Y. 225; Pantzar v. Mining Co.,
99 N. Y. 368, 2 N. E. 24.   The court, in granting the motion for a
nonsuit, said:

"There is nothing to show that any inspection which would be reasonably
expected from defendant would have discovered this [the defect in the center
of the mast].   *   *  · *   If they were bound to inspect it, I think they made
a proper inspection."

I think the trial court was under a misapprehension of the law
and the evidence.   It is the province of the jury to determine whether
or not a proper inspection has been made by the master when
there is any evidence from which it may reasonably be inferred.
McGovern v. Railroad Co., 123 N. Y. 287, 25 N. E. 373; Egan v.
Railroad Co., supra.   There was evidence in this case from which
the jury might have inferred that the master had failed in the per-
formance of its duty of inspection, and that such omission was the
cause of the injury.   It clearly appears in the evidence, and does
not appear to be controverted, that the mast of the derrick broke
and fell in consequence of the dry rot of the interior, which was
considerable in extent.   The painting of this spruce mast when green
had a tendency to shorten its life, and make it dozy and rotten
within.   This painting had made a sort of a shell of the exterior,
whereby the condition of the interior by ordinary observation was
not discoverable.   Whitmore says that at the time when he and
the superintendent made an examination, four months before the
accident, they did not take any means to ascertain whether the
stick was dry-rotted in the center, and says that he does not think
it would be powder-posted and dry-rotted on September 13th, when
it fell, if it had beeen thoroughly sound in the fore part of June,
when it was set up the last time.   Webb, the superintendent of the
defendant, testified:

"During the four months it was in the last position after it was erected,
I did not examine the derrick at any time.   *   *   *   Never took a bit and
bored into the derrick and examined the chips to ascertain whether the in-
terior of the stick was sound.   If I or some of the men had taken a bit,
and bored into, and examined the chips that came out, we could have ascer-
tained whether it was powder-posted or dry-rotted, possibly."

The defendant's ignorance of the defective condition of the in-
terior of the mast does not relieve him from liability if, by the exer-

cise of proper inspection, it could have been discovered. Benzing v. Steinway, 101 N. Y. 553, 5 N. E. 449. The duty of inspecting the derrick to ascertain whether it was reasonably safe for use is not shown to have been delegated by the master to the plaintiff's intestate. It is true that Webb, who had been for eight years the superintendent of the defendant, says: "When Jarvis [the intestate] was set to work there, I gave him directions with reference to his care of the derrick. I told him I would hold him responsible for the proper care of that derrick." But he also specified the duties of Jarvis, of which this was not one. Furthermore, it appears from the testimony of the superintendent that he regarded inspection as his duty. He says that he made the inspection when the derrick was set up, four months previous to the accident; and in making the tests he was assisted by Whitmore, who was employed in "taking care of mill and machinery"; and further says that, after the derrick had been set up, he saw it every day, passed under it, observed its condition, ran his eye up and down the mast, looked at the cap at the top, saw the action of the guys that nothing had gone amiss, to see that nothing of the anchorages had given way, and says, "It was part of my business to supervise those things." There is no evidence from which the court can say that the duty of making the usual and ordinary tests to ascertain the condition of the interior of the mast, and of determining whether it was reasonably safe for use, was transferred from the defendant to the plaintiff's intestate. Nor do I think that the defendant can relieve itself from liability on the ground that the intestate had the same means of knowing the defective condition of the mast as had the defendant, or that it was a risk which the servant assumed. It does not appear that the intestate had any knowledge of the defective condition of the mast, nor was it discoverable by ordinary observation, nor was it his duty to make that inspection, which alone would reveal the defective condition. The risks which the servant assumes are those which are obvious, or which are unavoidable, after the master has exercised proper precaution in guarding against them; and the servant has a right to rely upon the performance of that duty by the master. Pantzar v. Mining Co., supra. I am of opinion that there were questions of fact in the case which should have been submitted to the jury, and that the judgment entered upon the nonsuit should be reversed, and a new trial granted, with costs to abide the event. All concur.