ROWLEY v. AMERICAN ILLUMINATING CO. OF HORNELLSVILLE.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. INJURY TO SERVANT—SUFFICIENCY OF INSPECTION—QUESTION FOR JURY.
    Where a lamp trimmer was injured by the breaking of a decayed lamp pole, a prior inspection by jabbing a screw-driver into the pole, whereby only superficial decay could be detected, was not, as a matter of law, sufficient, though customary.
    McLennan, J., dissenting.

Appeal from Trial Term, Steuben County.

Action by Bernard Rowley against the American Illuminating Company of Hornellsville. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Thomas F. Fitzhugh Lee, Andrew F. Van Thun, Jr., and Alexander
S. Lyman, for appellant.

William H. Nichols, for respondent.

SPRING, J.   The plaintiff was employed by the defendant as a lamp
trimmer.   On the 9th day of October, 1897, while, in the performance
of his duties, trimming a lamp on the top of a pole 20 feet high, the
pole broke; precipitating him to the ground, and inflicting the in-
juries for the recovery of which this action is brought.   The pole was
about 8 inches in diameter at the bottom, and tapered to about 3
inches through at the top.   It was sunk in the ground five feet, and
was found to be rotten inside just below where it entered the ground.
The outside shell at this point varied in thickness from one-half an inch
to an inch or an inch and one-half, and was hard and sound, but the in-
side was soft, like pulp.   The pole had been used since 1886, but in 1891
it blew down in a windstorm, and was reset after 5 feet from the bot-
tom had been cut off.   In 1894 it was undermined by men digging a
trench near it, and was found to be sound, and was again reset.   It
was of Georgia pine, and the lives of poles of that material vary from
7 to 14 years.   The defendant employed a lineman to inspect and
test these poles, and provided him with a screw-driver for that pur-
pose.   The method followed was to scrape away the dirt and grass,
and jab the pole with the screw-driver where it entered the ground,
as that was where decay first developed.   The defendant's witnesses
agreed that this method only discovered external defects, and they
were readily ascertainable.   It would not disclose rottenness from
the center.   The ordinary inspection with a screw-driver, therefore,
was concededly of no use in apprising a lineman of an internal de-
fect, such as existed in the pole which broke off with the plaintiff, and
defects of that kind occasionally existed.   The secretary and general
manager of the defendant testified that the method of inspection adopt-
ed by most companies was that of the screw-driver, and which was only
useful in discovering superficial decay.   Internal unsoundness could,
however, be detected by striking the pole with a bar, and that test
was made by the lineman when the pole was reset in 1894.

The court, in its main charge to the jury, left it for them to find
whether the defendant, in performing its duty of inspection, exercised
the care and prudence required of it, and also whether a reasonably
careful inspection by the lineman would have disclosed the defective
condition of this pole.   The counsel for the defendant thereupon re-
quested the court to charge as follows:

"That if the defect was one not discoverable upon usual and ordinary in-
spection, the defendant is not liable."

The court complied with this request in this language:

"I so charge.   If you find that this defect, as it existed in this pole, was
one that was not discoverable from the usual and ordinary inspection that
has been described, then it was not negligence on the part of the defendant
to continue the use of that pole, and it is not liable.   I intended to charge
that, but I overlooked it."

The counsel for the plaintiff later on excepted to this instruction, and requested the court to charge "that their duties require them to make a reasonable inspection," and the following occurred:

"The Court: Yes; it must be a reasonable inspection; but I think their duty is discharged when they make the usual and ordinary inspection employed in that kind of business. Mr. Little: I take an exception, and ask your honor to charge that the inspection must be reasonable. The Court: I decline that. That leaves the jury no sort of standard by which to go."

After considerable discussion by the court and counsel for the plaintiff on the subject of the manner the inspection was made, and its effect, and the true rule to be observed, the court finally summed up its conclusions in the following instruction:

"I must at least state it to the jury as the law of this case that, if they pursued what the testimony shows is the usual and ordinary inspection, that is sufficient to exonerate them from the charge of negligence, and I so charge"—to which the counsel excepted.

The evidence was undisputed that the method of inspection ordinarily adopted by telegraph and telephone companies was to make the test with the screw-driver, although apparently for the detection of outside decay, and it was to this kind of inspection the court referred as that ordinarily in use. The proof is also undisputed that this process of examination or testing would not disclose internal rottenness, while a sharp tap with the bar would have crushed in the shell of this pole, and revealed its condition. We think, therefore, the court was in error in stating to the jury that the defendant fulfilled the full measure of its duty if it made the ordinary inspection. The evidence, without contradiction, showed that it did make the inspection ordinarily in vogue. So the court, in effect, left no question of fact to the jury, but its instruction was equivalent to the direction of a verdict for the defendant. The defendant was bound to exercise proper care, and make a reasonable inspection of its poles for the safety and protection of the plaintiff, and in the present case it was a question of fact whether it met the measure of its duty. McGuire v. Bell Telephone Company, 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; Byrne v. The Eastman Co., 163 N. Y. 461, 57 N. E. 738; Jarvis v. Northern N. Y. Marble Co., 55 App. Div. 272, 67 N. Y. Supp. 78. As was said in the last case cited, at page 275, 55 App. Div., page 80, 67 N. Y. Supp.:

"It is the province of the jury to determine whether or not a proper inspection has been made by the master, when there is any evidence from which it may reasonably be inferred."

The duty governing the master is thus stated in McGovern v. C. V. R. Co., 123 N. Y. 280, 288, 25 N. E. 373, 375:

"When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger."

It was for the jury to decide from the facts appearing in this case whether the defendant made a reasonable inspection of this pole, and it may not relieve itself from that burden by showing it made the ordi-

nary inspection, where the test applied concededly failed to disclose the defect which caused this pole to fall, and which defect, as the manager of the defendant knew, was liable at times to occur, and which might have been obviated, and the court erroneously withdrew this question from the jury, and for that error the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event. All concur, except, McLENNAN, J., who dissents.